894 P.2d 70

STATE of Hawai'i, Plaintiff–Appellant,

v.

Richard WELLS, also known as Richard Earl Wells; Joyce Wells, also known as Joyce Elizabeth Wells; Charles K.H. Wong, also known as Charles Wong; Ishmael Stagner, also known as Ish and Ishmael Stagner II; and Frederick D. King, also known as Fred King, Defendants–Appellees.

STATE of Hawai'i, Plaintiff–Appellant,

v.

Joyce WELLS, also known as Joyce Elizabeth Wells; Richard Wells, also known as Richard Earl Wells; Charles K.H. Wong, also known as Charles Wong; Ishmael Stagner, also known as Ish and Ishmael Stagner II; and Frederick D. King, also known as Fred King, Defendants–Appellees.

No. 17067.

Supreme Court of Hawai'i.

April 6, 1995.

Reconsideration Denied May 25, 1995.

Randal K.O. Lee, Deputy Pros. Atty., City and County of Honolulu, Honolulu, for plaintiff-appellant.

Jeffrey T. Arakaki, on the briefs, Honolulu, for defendant-appellee Richard Wells.

Dennis Jung, Honolulu, for defendant-appellee Joyce Wells.

Richard C. Post, Honolulu, for defendant-appellee Charles Wong.

Richard Pafundi, Honolulu, for defendant-appellee Ismael Stagner.

Daphne Barbee, on the briefs, Honolulu, for defendant-appellee Frederick King.

Before MOON, C.J., KLEIN and RAMIL, JJ., BURNS, Intermediate Court of Appeals Chief Judge, in place of LEVINSON, J., Recused, and WATANABE, Intermediate Court of Appeals Judge, in place of NAKAYAMA, J., Recused.

RAMIL, Justice.

Defendants–Appellees Richard Wells (R. Wells), Joyce Wells (J. Wells), Charles K.H. Wong, Ishmael Stagner, and Frederick D. King (collectively Defendants) were charged with various violations of the Uniform Securities Act, Hawai'i Revised Statutes (HRS), Chapter 485. The trial court granted Defendants' motion to dismiss Counts 1 through 4 of the indictment because the indictment did not include the essential elements of the offenses found in the language of HRS § 485–21 (1985). Plaintiff–Appellant State of Hawai'i (Prosecution) appeals the dismissal, contending that the indictment is legally sufficient because HRS § 485–21 merely prescribes criminal penalties for Chapter 485 violations. We disagree and affirm the circuit court's dismissal of Counts 1 through 4 of the indictment.

## I. *FACTS*

In 1988, the Prosecution brought criminal charges against Defendants for allegedly defrauding four to five hundred people of approximately $9.5 million by running a massive "Ponzi" scheme through their company, Atlantic and Pacific Trading Company, Ltd.

On January 28, 1988, the O'ahu grand jury returned a twenty-two-count indictment in Criminal Case No. 88–0147 charging Defendants with the following offenses: Failure to Register Securities; Fraudulent Sale of Securities; Failure to Register as a Salesman; Theft in the First Degree; and Unlawful Ownership or Operation of Business.

In addition, on April 7, 1988, the grand jury returned a seven-count indictment in Criminal No. 88–0562 charging Defendants with the following offenses: Failure to Register Securities; Fraudulent Sale of Securities; Failure to Register as a Salesman; Money Laundering; and Theft in the First Degree. The circuit court granted the Prosecution's motion to join the two indictments for trial.

After the indictments were handed down, R. Wells and J. Wells fled the jurisdiction. On October 24, 1989, trial proceeded against Wong, King, and Stagner. After a six-month trial, the jury found Wong guilty of one count of Failure to Register Securities, two counts of Fraudulent Sale of Securities, one count of Failure to Register as a Salesman, and two counts of Money Laundering. Stagner was found guilty of one count of Failure to Register Securities, two counts of Fraudulent Sale of Securities, and one count of Failure to Register as a Salesman. King was found guilty of one count of Failure to Register Securities and one count of Fraudulent Sale of Securities.

Thereafter, Wong, King, and Stagner appealed their convictions. We vacated the convictions and remanded the case for a new trial because of numerous discovery violations by the Prosecution. *State v. King,* 72 Haw. 610, 820 P.2d 664 (1991). Meanwhile, R. Wells and J. Wells were arrested by law enforcement authorities.

On April 7, 1993, a second trial began against all five Defendants, including R. Wells and J. Wells. On April 19, 1993, the parties presented their opening statements and the Prosecution proceeded to present its evidence. On April 21, 1993, Defendants moved to dismiss Counts 1 through 4 of the indictment in Cr. Nos. 88–0147 and 88–0562. Defendants claimed that they were deprived of notice of the charges because Counts 1 through 4 of the indictment failed to include an essential element of the offenses charged, namely, the total value of all money and anything else paid or lost by the victims, as set forth in HRS § 485–21, the provision prescribing criminal penalties for Chapter 485 violations. The Prosecution argued that the indictment tracked the statutory language defining the offenses charged and that HRS § 485–21 was not an essential element of Counts 1 through 4 of the indictment.

On May 4, 1993, the circuit court granted Defendants' motion to dismiss Counts 1 through 4 of the indictment without preju-

dice. On May 5, 1993, the Prosecution filed its notice of appeal. Thereafter, this court granted the Prosecution's motion to stay the circuit court proceedings pending disposition of this appeal.

## II. *DISCUSSION*

### A. *Jurisdiction of the Prosecution's Appeal as to Stagner*

■ "The right of appeal in a criminal case is purely statutory and exists only when given by some constitutional or statutory provision." *State v. Dannenberg,* 74 Haw. 75, 78, 837 P.2d 776, 778, *reconsideration denied,* —— Haw. ——, 843 P.2d 144 (1992) (citation omitted). The Prosecution's right of appeal in criminal cases is limited to those instances set forth in HRS § 641–13 (Supp. 1992), which provides in relevant part that:

> [an] appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to chapter 602, in all criminal cases, in the following instances:
>
> (1) From an order or judgment quashing, setting aside, or sustaining a motion to dismiss, *any indictment or complaint or any count thereof;*
>
> (2) From an order or judgment, sustaining a special plea in bar, or *dismissing the entire case where the defendant has not been put in jeopardy* [.]

(Emphases added.) Stagner contends that we lack jurisdiction to consider the merits of this appeal because the Prosecution erred in bringing its appeal under HRS § 614–13(1).[1]

■ The standard of review for statutory construction is well-established. The interpretation of a statute is a question of law which this court reviews *de novo. Pacific Int'l Servs. Corp. v. Hurip,* 76 Hawai'i 209, 216, 873 P.2d 88, 95 (1994); *Franks v. City and County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993). In addition, "our foremost obligation is to ascertain and give effect to the intention of the legislature[,] which is to be obtained primarily from the language contained in the statute itself." *Hurip,* 76 Hawai'i at 216, 873 P.2d at 95

(citations omitted). And "where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." *Ing v. Acceptance Ins. Co.,* 76 Hawai'i 266, 270, 874 P.2d 1091, 1095 (1994) (citations omitted). Finally, in determining the purpose of the statute, "we are not limited to the words of the statute to discern the underlying policy which the legislature seeks to promulgate ... [but may] look to relevant legislative history[.]" *Sol v. AIG Hawaii Ins. Co.,* 76 Hawai'i 304, 307, 875 P.2d 921, 924 (citation and internal quotation marks omitted), *reconsideration denied,* 76 Hawai'i 353, 877 P.2d 890 (1994).

■ We now address Stagner's contention that the Prosecution erred in bringing its appeal under HRS § 641–13(1). The trial court's dismissal of Counts 1 through 4 of the indictment resulted in the dismissal of all charges, *i.e.,* the "entire case," against him. Therefore, Stagner argues that "this appeal can only be brought pursuant to [HRS § ] 641–13(2), if it [sic] all." Stagner's answering brief at 2. We disagree.

It appears that Stagner interprets subsections (1) and (2) of HRS § 641–13 as being mutually exclusive. It also appears that he interprets subsection (1) as applying only to orders dismissing less than the entire case and subsection (2) as applying only to orders dismissing the "entire case." While we agree that it is necessary for the entire case to be dismissed for subsection (2) to apply, there is absolutely nothing in the language of HRS § 641–13 to indicate that this would prevent subsection (1) from applying.

■ Stagner also argues that "because jeopardy attached when evidence was taken in this jury trial," the Prosecution cannot bring its appeal under either subsection (1) or (2) of HRS § 641–13. We disagree. Although jeopardy "attaches" in jury trials when the jury is empaneled and sworn, *State v. Moriwake,* 65 Haw. 47, 51, 647 P.2d 705, 709 (1982) (citation omitted), "dismissal of a charge after jeopardy attaches does not always bar further prosecution on the same charge." *State v. Decenso,* 5 Haw.App. 127, 136, 681 P.2d 573, 580 (1984) (citing *United*

---

1. None of the other defendants have challenged our jurisdiction in this case.

*States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65, *reh'g denied*, 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 197 (1978)).

In *United States v. Scott*, the defendant moved to dismiss two counts of his indictment for preindictment delay. 437 U.S. at 84, 98 S.Ct. at 2190. The trial court granted the motion at the close of all the evidence, after jeopardy had attached. *Id.* The government appealed the dismissal and the United States Court of Appeals for the Sixth Circuit concluded that any further prosecution of the defendant was barred by the double jeopardy clause of the Fifth Amendment, and therefore dismissed the appeal. *Id.*

The United States Supreme Court reversed the decision of the Court of Appeals and stated:

[w]e think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant.

*Scott*, 437 U.S. at 98–99, 98 S.Ct. at 2198. Thus, the Supreme Court concluded that "where the defendant himself seeks to have the trial terminated without any submission to either judge or jury as to his guilt or innocence, an appeal by the government from his successful effort to do so is not barred" by the double jeopardy clause of the Fifth Amendment. *Id.* 100–01, 98 S.Ct. at 2199. *See Decenso*, 5 Haw.App. at 136, 681 P.2d at 580.

The holding in *Scott* is consistent with the underlying purpose of HRS § 641–13 as indicated by the relevant legislative history. HRS § 641–13 was originally enacted into law by Act 40 of the 1911 Territorial Legislature. 1911 Haw.Sess.L. Act 40, § 1 at 37.[2] According to the Senate Judiciary Committee's report on Senate Bill No. 35, which was ultimately signed into law as Act 40:

At the present time, in criminal cases, although the defendants may appeal from decisions of trial courts to the Supreme Court, the Territory, representing the people, cannot do so. There are many good reasons why a decision in favor of a defendant in a criminal case upon a question of fact, or on the guilt or innocence of the defendant should not be reviewed, but *there is no good reason why a person charged with crime should be permitted to escape simply because a trial judge has erred on a pure question of law.*

*Not only should the Supreme Court be the final judge of questions of law in a particular case for the protection of the public and to prevent guilty persons from escaping through erroneous decisions of law, but it is highly important that questions of criminal law should be determined by a single highest court, so as to settle the law for other courts and thus avoid decisions both ways by different trial judges.*

The bill in question is taken substantially from a similar bill passed by Congress for Federal cases on March 2, 1907, (34 U.S. Statutes at large 1246) and is in line with the best thought on questions of improved judicial procedure.

*The bill is directed to a judgment rendered before the moment of jeopardy is reached, and therefore is not repugnant to*

2. Act 40, which was originally entitled "An Act to Provide for Writs of Error in Certain Instances in Criminal Cases," provided in relevant part:

A writ of error may be taken by and on behalf of the Territory from the district or circuit courts direct to the Supreme Court of the Territory in all criminal cases, in the following instances, to wit:

From a decision or judgment quashing, setting aside, or sustaining a demurrer to, any indictment or any count thereof or any criminal charge, where such decision or judg-

ment is based upon the invalidity or construction of the statute upon which the indictment or charge is founded.

From a decision arresting a judgment of conviction for insufficiency of the indictment or charge, where such decision is based upon the invalidity or construction of the statute upon which the indictment or charge is founded.

From a decision or judgment sustaining a special plea in bar, when the defendant has not been put in jeopardy.

*the 5th amendment to the Constitution of the United States.*

*Taylor vs. United States,* 207 U.S. 120 [28 S.Ct. 53, 52 L.Ed. 130 (1907)].

Referring to the Federal act mentioned above, the Supreme Court of the United States stated in the case of the *United States vs. Bitty,* 1908, 208 U.S. 393 [28 S.Ct. 396, 52 L.Ed. 543]:

'The object of the act is to prevent unnecessary delay in the administration of the criminal law, and to provide a method by which courts of original jurisdiction may be instructed as to the validity and meaning of a particular criminal statute sought to be enforced.'

1911 Senate Journal at 309–10 (emphases added).

Similarly, the Judiciary Committee of the House of Representatives, in recommending passage of Senate Bill No. 35, explained:

This Bill provides that in [c]riminal [c]ases, *the Territory may have the right to appeal in certain points of law.* The defendant now has his right and there is no reason why the Territory, representing the people, should not. *It does not change the rule that there can be no appeal on behalf of the Government, where a question of fact is involved, or that the guilt or innocence of the defendant cannot be reviewed.*

*The passage of this Bill will permit the Government and the people to obtain from the Supreme Court decisions on questions of [c]riminal [l]aw, bearing on pleadings and the validity of certain statutes.* It will prevent to a large extent decisions by Circuit Judges absolutely at variance on the same statute.

1911 House Journal at 389 (emphases added).

In the present case, Stagner was successful in having Counts 1 through 4 of the indictment dismissed on a question of law "unrelated to [the] factual guilt or innocence of the offense of which he is accused," and without any submission to the jury as to his guilt or innocence. Consequently, based on the *Scott* decision and the clear language and purpose of HRS § 641–13, we hold that the Prosecution is not barred from bringing this appeal.

This court previously discussed the applicability of HRS § 641–13 in *State v. Marzo,* 64 Haw. 395, 641 P.2d 1338 (1982), and *State v. Swafford,* 68 Haw. 653, 729 P.2d 385 (1986). Because the analyses in *Marzo* and *Swafford* are potentially misleading, we overrule them to the extent they conflict with this opinion.

In *Marzo,* the defendant cited the State's discovery violations and orally moved for dismissal after the jury was sworn but before evidence was taken. *Marzo,* 64 Haw. at 396, 641 P.2d at 1339. The circuit court dismissed three charges of criminal assault against the defendant. The State appealed the dismissal under HRS § 641–13(1). *Id.* at 398, 641 P.2d at 1340. However, this court stated:

[j]urisdiction of this court is invoked by HRS § 641–13(2) and not [HRS] § 641–13(1) as the government urges. Hence, this court is without jurisdiction if the dismissal has put defendant in jeopardy.

We hold that, under the circumstances of the case, where defendant moved for and obtained a dismissal immediately after the jury was sworn, preventing a trial to determine his guilt or innocence, no jeopardy attaches.

*Id.* at 398, 641 P.2d at 1340–41 (citations omitted).

■ It appears that the *Marzo* court concluded that subsections (1) and (2) are mutually exclusive and that subsection (1) applies only to pretrial orders and subsection (2) applies only to after-commencement-of-trial orders. If so, we believe it erred. Indeed, if the legislature intended such a result, it could have made this clear in the language of the statute. For example, HRS § 641–13(7) allows the prosecution to appeal:

[f]rom a *pretrial order* granting a motion for the suppression of evidence, including a confession or admission, or the return of property in which case the intermediate appellate court or the supreme court, as the case may be, shall give priority to such an appeal and the order shall be stayed pending the outcome of the appeal[.]

(Emphasis added.) Thus, we find that subsection (1) of HRS § 641–13 is not necessarily limited to pretrial situations.

In *Swafford,* the State appealed the dismissal with prejudice of the indictment against Swafford after the trial commenced and some of the witnesses testified. The basis of the dismissal was the State's refusal to disclose the identity of a confidential police informant. *Swafford,* 68 Haw. at 654, 729 P.2d at 386. After reciting the circuit court's ruling dismissing the case with prejudice, this court stated:

> [i]t is clear, then, that the *entire case* was dismissed based on all the evidence adduced at trial. HRS § 641–13(2), and not HRS § 641–13(1), thus controls. In *State v. Marzo,* 64 Haw. 395, 641 P.2d 1338 (1982), the defendant obtained dismissal of the charges after the jury was sworn *but before evidence was taken.* Here, the charges were dismissed after all the evidence was taken. Therefore, State could only take an appeal from the order dismissing the case with prejudice under the authority of HRS § 641–13(2).

*Id.* at 657, 729 P.2d at 387 (emphases in original).

It appears that *Swafford* followed *Marzo*'s rule that HRS § 641–13(1) applies exclusively to pretrial orders. If so, we believe it erred. In addition, the court's unwarranted emphasis that the "entire case" was dismissed, misleadingly implies that HRS § 641–13(1) applies only to orders that do not dismiss the entire case. As discussed *supra,* while it is necessary for the "entire case" to be dismissed for subsection (2) to apply, there is nothing in the language of the statute to indicate that this would prevent subsection (1) from applying. Because of this, we believe the analysis of HRS § 641–13 in *Swafford* is erroneous.

Accordingly, we overrule *State v. Swafford,* 68 Haw. 653, 729 P.2d 385 (1986) and *State v. Marzo,* 64 Haw. 395, 641 P.2d 1338 (1982), to

the extent that they conflict with our interpretation of HRS § 641–13 in this opinion. We now address the merits of the Prosecution's appeal.

**B. Sufficiency of the Indictment**

The issue posed on appeal, as noted earlier, is whether HRS § 485–21 provides an essential element of the criminal securities violations charged under HRS §§ 485–8, 485–25(a)(2), 485–25(a)(4), and 485–14(a). Whether an indictment sets forth all the essential elements of an offense to be charged is a question of law. *United States v. ORS, Inc.,* 997 F.2d 628, 629 (9th Cir. 1993). We review a question of law under the right/wrong standard. *In re Estate of Holt,* 75 Haw. 224, 232, 857 P.2d 1355, 1359 *reconsideration denied,* 75 Haw. 580, 863 P.2d 989 (1993) (citation omitted).

Generally, challenges to the sufficiency of an indictment are based on constitutional protections embodied in Article 1, sections 10 and 14 of the Hawai'i Constitution and the Fifth and Sixth Amendments of the United States Constitution. *State v. Robins,* 66 Haw. 312, 314, 660 P.2d 39, 41 (1983). Article 1, section 10 of the Hawai'i Constitution and the Fifth Amendment to the United States Constitution guarantee that "[no] person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury ... nor shall any person be subject for the same offense to be twice put in jeopardy[.]"[3] In addition, Article 1, section 14 of the Hawai'i Constitution and the Sixth Amendment to the United States Constitution require that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[.]"

Accordingly, the sufficiency of an indictment is measured by the following criteria: (1) "whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or

---

**3.** Although the Fifth Amendment requires the federal government to initiate prosecutions of capital or "otherwise infamous" crimes by indictment, this requirement does not apply to state prosecutions. *See State v. Kane,* 3 Haw. App. 450, 456 n. 4, 652 P.2d 642, 646 n. 4

(1982). *See also Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972) (Fourteenth Amendment due process requires fair trial but does not require state indictment by grand jury).

she] must be prepared to meet[;]" and (2) if any other proceedings are brought against him [or her] for a similar offense, "whether the record shows with accuracy to what extent he [or she] may plead a former acquittal or conviction." *State v. Israel,* 78 Hawai'i 66, 69, 890 P.2d 303, 306 (1995). *Territory v. Yoshimura,* 35 Haw. 324, 330 (1940) (internal quotations and citations omitted). *Accord Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240, 250–51 (1962) (citations omitted); *United States v. ORS, Inc.,* 997 F.2d 628, 629 (9th Cir.1993) (citations omitted); *State v. Torres,* 66 Haw. 281, 288–89, 660 P.2d 522, 527 (1983) (citations omitted); *State v. Daly,* 4 Haw.App. 52, 54, 659 P.2d 83, 85 (1983) (citations omitted); *State v. Kane,* 3 Haw.App. 450, 456, 652 P.2d 642, 646–47 (1982) (citations omitted). Moreover, "the charge 'must be specific enough to ensure that the grand jury [or the court before which a preliminary hearing is held] had before it all the facts necessary to find probable cause.' " *Israel,* 78 Hawai'i at 70, 890 P.2d at 307 (citations omitted).

In the present case, the circuit court dismissed counts 1 through 4 of the indictment that provided:

*COUNT 1:* On or about the 19th day of February, 1986, to and including the 30th day of November, 1987, in the City and County of Honolulu, State of Hawaii [Defendants], did sell or offer to sell securities, the total value of which amounts to One Hundred Thousand Dollars ($100,000) or more, in the State of Hawaii, which were not registered by notification, or qualification, thereby committing the offense of Failure to Register Securities in violation of Sections 485–8 and 485–21 of the Hawaii Revised Statutes.[4]

*COUNT 2:* On or about the 19th day of February, 1986, to and including the 13th day of May, 1987, [Defendants], in connection with the offer, sale, or purchase of securities in the State of Hawaii, the total value of which amounts to One Hundred Thousand Dollars ($100,000) or more, directly or indirectly, did make an untrue statement of a material fact or did omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, thereby committing the offense of Fraudulent Sale of Securities in violation of sections 485–25(a)(2) and 485–21 of the Hawaii Revised Statutes.[5]

*COUNT 3:* On or about the 19th day of February, 1986, to and including the 13th day of May, 1987, in the City and County of Honolulu State of Hawaii, [Defendants], in connection with the offer, sale, or purchase of securities in the State of Hawaii, the total value of which amounts to One Hundred Thousand Dollars ($100,000) or more, did issue, circulate, or publish a prospectus, circular, advertisement, printed matter, document, pamphlet, leaflet, or other literature which did contain an untrue statement of a material fact or did omit to state a material fact necessary in order to make the statements therein made, in the light of the circumstances under which they were made, not misleading, thereby committing the offense of Fraudulent Sale of Securities in violation of sections 485–25(a)(4) and 485–21 of the Hawaii Revised Statutes.[6]

---

4. HRS § 485–8 (1985) provides in relevant part that, "[it] shall be unlawful for any person to sell or offer to sell any security ... in the State unless the security has been registered by notification or by qualification[.]"

5. HRS § 485(a)(2) (1985) provides in relevant part:

 (a) It is unlawful for any person, in connection with the offer, sale, or purchase ... of any security ... in the State, directly or indirectly:

 \* \* \* \* \* \*

 (2) To make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements

made, in the light of the circumstances under which they are made, not misleading[.]

6. HRS § 485–25(a)(4) (1985) provides in relevant part:

 (a) It is unlawful for any person, in connection with the offer, sale, or purchase ... of any security ... in the State, directly or indirectly:

 \* \* \* \* \* \*

 (4) To issue, circulate, or publish any prospectus, circular, advertisement, printed matter, document, pamphlet, leaflet, or other literature ... which shall contain an untrue statement of a material fact or omit to state a material fact necessary in order to make the

*COUNT 4:* On or about the 19th day of February, 1986, to and including the 13th day of May, 1987, in the City and County of Honolulu, State of Hawaii, [Defendants], did transact business in the State of Hawaii as a salesman while not being registered as such under Chapter 485 of the Hawaii Revised Statutes, thereby committing the offense of Failure to Register as a Salesman in violation of sections 485–14(a) and 485–21 of the Hawaii Revised Statutes.[7]

In granting Defendants' motion to dismiss, the circuit court entered the following conclusions of law (COL) in relevant part:

21. An essential element, necessary for the imposition of criminal penalties for the offenses charged in Counts 1, 2, 3 and 4 of the Indictments is set out in Section 485–21 and that essential element is as follows:

 The total value of all money and anything else of value paid by or lost by the victims pursuant to the same scheme, plan or representations, or to the same entity amounts to $100,000 or more.

22. The failure to allege this essential element in Counts 1, 2, 3 and 4 of the Indictments is a significant omission, not an inconsequential omission or formal defect. Its omission renders Counts 1, 2, 3 and 4 of the Indictments, by any fair construction, constitutionally insufficient and therefore fatally defective. Counts 1, 2, 3 and 4 of the Indictments do not contain all the elements of the offenses intended to be charged and do not sufficiently apprise the Defendants of what they must be prepared to defend nor in case any other proceedings are taken against them for similar offenses show with accuracy to what extent they may plead a former acquittal or conviction. *Russell v. United States,*

statements therein made, in the light of the circumstances under which they are made, not misleading[.]

7. HRS § 485–14(a) (1985) provides in relevant part:

369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

### 1. The "Liberal Construction Standard" is Inapplicable

Initially, the Prosecution urges us to review the indictment in favor of validity by applying the "liberal construction standard" used in *State v. Motta,* 66 Haw. 89, 657 P.2d 1019 (1983). *See State v. Elliott,* 77 Hawai'i 314, 884 P.2d 377 (App.1994), *cert. granted,* 76 Hawai'i 247, 871 P.2d 795 (1994).

In *Motta,* this court adopted the rule followed in most federal courts of liberally construing indictments challenged for the first time on appeal. *Motta,* 66 Haw. at 91, 657 P.2d at 1020. Elaborating on this standard, this court stated that it would "not reverse a conviction based upon a defective indictment unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." *Id.*

However, in *State v. Robins,* 66 Haw. 312, 660 P.2d 39 (1983), this court rejected the "liberal construction standard" for reviewing timely motions challenging the sufficiency of indictments. In *Robins,* the State appealed the granting of a motion to dismiss an indictment for burglary. *Id.* at 312, 660 P.2d at 39. Noting that the alleged deficiency in the indictment was raised by a timely motion, this court held that "[the] liberal construction rule laid down in *Motta* with respect to such contentions when raised after conviction" was inapplicable. *Id.* at 314, 660 P.2d at 41.

Because the present case involves an order granting a timely motion to dismiss an indictment, we hold that the "liberal construction standard" is inapplicable. Thus, we now address the sufficiency of the indictment.

### 2. Whether HRS § 485–21 is an Essential Element of the Charged Offense

As stated earlier, the first criterion for measuring the sufficiency of an indictment is whether it contains the elements of the offense intended to be charged, and sufficiently

(a) It is unlawful for any person to transact business in this State as a dealer, investment adviser, salesman, or investment adviser representative unless registered under this chapter.

apprises the defendant of what he or she must be prepared to meet. *Israel*, 78 Hawai'i at 69–70, 890 P.2d at 306–07.

The Prosecution argues that the circuit court erred in concluding that HRS § 485–21 was an essential element of Counts 1 through 4 of the indictment and that the indictment sufficiently sets forth the essential elements of HRS §§ 485–8, 485–25(a)(2), 485–25(a)(4), and 485–14(a). Specifically, the Prosecution contends that because HRS § 485–21 prescribes the criminal penalty and grade of the offense which may be imposed for Chapter 485 offenses, it is not an essential element of the offense.

The Prosecution relies on *In Re Doe*, 3 Haw.App. 325, 650 P.2d 603 (1982), for support. In *Doe*, a juvenile was charged, *inter alia*, with terroristic threatening in violation of HRS § 707–715. *Id.* at 326–27, 650 P.2d at 605. On appeal, the juvenile contended that the State's petition was insufficient because it did not contain the language of HRS § 707–716 and HRS § 707–717, the statutes prescribing the grade and criminal penalties of the offense. *Id.* at 329, 650 P.2d at 607.

The Intermediate Court of Appeals (ICA) disagreed and concluded that the charge clearly apprised the juvenile that he could be convicted of the lowest form of terroristic threatening. *Id.* The court explained:

[certainly], it is good practice to cite in the charge the penalty section of the statute defendant is alleged to have violated, 1 Wright, Federal Practice and Procedure: *Criminal* § 124 (1969), and the State did not follow good practice in this case. However, we think the thought behind that portion of Rule 7(c) of the Hawaii Rules of Penal Procedure (1977) which says "[formal] defects, including error in the citation or its omission, shall not be ground for dismissal of the charge or for reversal of a conviction if the defect did not mislead the defendant to his prejudice" applies in family court situations. Consequently, we conclude that the State's failure to cite HRS section 707–717 was an inconsequential defect of form which could not have reason-

ably misled juvenile-appellant to his prejudice.

*Doe*, 3 Haw.App. at 329, 650 P.2d at 607.

■ Defendants contend, however, that the language of HRS § 485–21 is more than a penalty clause because it contains "triggering language" which defines the situations in which violations of HRS Chapter 485 are punishable by criminal penalties. We agree.

HRS § 485–21 (1985) provides in relevant part:

Criminal penalties. (a) Whoever violates this chapter shall be punished as follows:

(1) An offense in which the total value of all money and anything else of value paid by or lost by the victims pursuant to the same scheme, plan, or representations, or to the same entity, amounts to under $5,000 shall be a class C felony as defined by the Hawaii Penal Code;

(2) An offense in which the total value of all money and anything else of value paid by or lost by the victims pursuant to the same scheme, plan, or representations, or to the same entity, amounts to $5,000 but less than $100,000 shall be a class B felony as defined by the Hawaii Penal Code;

(3) An offense in which the total value of all money and anything else of value paid by or lost by the victims pursuant to the same scheme, plan, or representations, or to the same entity, amounts to $100,000 or more shall be a class A felony as defined by the Hawaii Penal Code.

■ Because the Prosecution must prove that a victim paid or lost something of value due to the same scheme, plan or representations, or to the same entity, to charge an individual with a criminal violation of the Uniform Securities Act, we believe that HRS § 485–21 provides an essential element of criminal offenses arising under the Uniform Securities Act.

A simple hypothetical illustrates the logic of this conclusion. If a person offers to sell an unregistered security in violation of HRS § 485–8, but no one accepts the offer, *i.e.*, no one pays or loses anything of value, there is no criminal violation pursuant to the terms of

HRS § 485–21. In order for there to be a criminal violation of HRS § 485–8, HRS § 485–21 requires a victim to have paid or lost something of value due to the same scheme, plan or representations, or to the same entity. Therefore, the terms of HRS § 485–21 are essential to properly charge a person with a criminal violation of HRS § 485–8.

The legislative history of HRS § 485–21 is also instructive. The original penalty section for the Uniform Securities Act provided that, "[whoever] violates any provision of this chapter shall be punished by a fine of not more than five thousand dollars or by imprisonment for not more than three years, or by both fine and imprisonment." Act 314, § 1, 1957 Haw.Sess.Laws 417.

In 1985, the legislature amended the penalty provision of the Uniform Securities Act to, *inter alia,* "establish separate civil and criminal penalties[,]" and to "impose stiffer criminal penalties." [8] Hse.Stand.Comm.Rep. No. 406, in 1985 House Journal at 1175; Sen. Stand.Comm.Rep. No. 846, in 1985 Senate Journal at 1251. Thus, the language of HRS § 485–21 indicates that the drafters intended to provide separate criteria for imposing criminal penalties for Chapter 485 violations.

 Finally, the Prosecution contends that even if HRS § 485–21 is deemed an essential element of Counts 1 through 4 of the indictment, the indictment is sufficient because each count cited to HRS § 485–21. However, an omission of an essential element from an indictment cannot be cured by merely citing the statute. *See State v. Tuua,* 3 Haw.App. 287, 297–98, 649 P.2d 1180, 1187 (1982) (citations omitted). *See also United States v. Kurka,* 818 F.2d 1427, 1431 (9th Cir.1987) (correct citation to statute not sufficient to compensate for exclusion of essential element of offense charged).

### III. *CONCLUSION*

Based on the foregoing, we hold that when a defendant is charged with a criminal violation of the Uniform Securities Act, HRS § 485–21 provides an essential element of the offense charged.[9] Accordingly, we conclude that HRS § 485–21 is an essential element of the criminal charges brought pursuant to HRS §§ 485–8, 485–25(a)(2), 485–25(a)(4), and 485–14(a). Because Counts 1 through 4 did not contain an essential element of the offenses charged, we hold that these counts were insufficient and affirm the circuit court's order dismissing counts 1 through 4 of the indictment.

---

**8.** HRS § 485–20.5 (1985) provides civil penalties which may be imposed for Chapter 485 violations. HRS § 485–18.7 (1985) authorizes the Commissioner of Securities for the State of Hawaii to issue cease and desist orders to enforce Chapter 485 violations.

**9.** Therefore, we need not reach the second-prong of the *Yoshimura* test.