905 P.2d 613

STATE of Hawai'i, Plaintiff–Appellee,

v.

Vernon BARON, Defendant–Appellant.

No. 16931.

Supreme Court of Hawai'i.

Oct. 16, 1995.

Reconsideration Granted in Part and
Denied in Part Nov. 27, 1995.

James S. Tabe, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Caroline M. Mee, Deputy Prosecuting Attorney, on the briefs, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

## OPINION

NAKAYAMA, Justice.

Defendant-appellant Vernon Baron (Appellant) was found guilty of one count of sexual assault in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 707–731(1)(a) (Supp.1992),[1] and two counts of sexual assault in the fourth degree, in violation of HRS § 707–733(1)(a) (Supp.1992),[2] and appeals from the judgment of the circuit court. On appeal, Appellant contends that: (1) he was denied a speedy trial pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 48;[3] (2) the circuit court erred in refusing to excuse for cause members of the jury who were unable to read, write, and understand English; (3) the circuit court erred in permitting a deputy city prosecutor to testify on behalf of the prosecution; (4) the circuit court erred in admitting the testimony of the complainant's school nurse; (5) the circuit

court erred by admitting a tape recorded statement of the complainant; and (6) the circuit court erred by precluding Appellant from adducing testimony that the court deemed to be improper alibi testimony. For the reasons stated below, we vacate Appellant's conviction and sentence and remand the case to the circuit court for a new trial.

## I. BACKGROUND

On February 27, 1992, Appellant was indicted on two counts of sexual assault in the second degree and four counts of sexual assault in the fourth degree, based on two alleged incidents of sexual assault involving his fourteen-year-old daughter, the complainant. The first reported incident allegedly occurred on or about October 27 and 28, 1990, and the second alleged incident occurred between September 1, 1990, and October 26, 1990. Appellant was subsequently arrested on March 16, 1992, and released on bail four days later.

Jury trial was initially scheduled for the week of July 27, 1992, but due to the cancellation of all trials in the family circuit court, trial was postponed and rescheduled to begin the week of August 31, 1992. Meanwhile, on July 30, 1992, Appellant's counsel moved to withdraw as counsel from the case due to Appellant's failure to pay attorney's fees. Counsel's motion was granted on August 11, 1992, and Appellant's case was transferred to the Office of the Public Defender. Pursuant to a motion filed by Appellant's new counsel

1. HRS § 707–731(1)(a) provides:

   **Sexual assault in the second degree.** (1) A person commits the offense of sexual assault in the second degree if:
   (a) The person knowingly subjects another person to an act of sexual penetration by compulsion[.]

2. HRS § 707–733(1)(a) provides:

   **Sexual assault in the fourth degree.** (1) A person commits the offense of sexual assault in the fourth degree if:
   (a) The person knowingly subjects another person to sexual contact by compulsion or causes another person to have sexual contact with the actor by compulsion[.]

3. HRPP Rule 48 provides in pertinent part:

   (b) **By Court.** Except in the case of traffic offenses, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months from:
   (1) the date of arrest or of filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made[.]
   . . . .
   (c) **Excluded Periods.** The following periods shall be excluded in computing the time for trial commencement:
   . . . .
   (2) periods of delay resulting from congestion of the trial docket when the congestion is attributable to exceptional circumstances[.]

on August 27, 1992, trial was continued to September 15, 1992.

On September 8, 1992, Appellant filed a motion to dismiss the indictment pursuant to HRPP Rule 48, arguing that the time period between the date of the indictment and the date of the motion exceeded six months. Appellant also filed a motion for a mental examination to determine his fitness to proceed.

Both motions were set for hearing before the circuit court on September 15, 1992. The hearing commenced on that date and was then continued to September 18, 1992, at which time the circuit court noted that the overall time period between the date of the indictment and the date of the HRPP Rule 48 motion was 186 days, exceeding the six month limitation. However, the circuit court denied the HRPP Rule 48 motion because it excluded from the computation the eleven days required to complete the withdrawal of Appellant's original counsel, thus reducing the total number of includable days to less than six months. Further, the circuit court left open the possibility that it could consider at a future date whether an additional number of days warranted exclusion as a result of court congestion in the family circuit court.

At the hearing, the circuit court also granted Appellant's motion to undergo a mental examination to determine his fitness to proceed. The circuit court continued the matter to November 13, 1992, for further proceedings, and set a new trial date of December 7, 1992.

On December 4, 1992, Appellant again moved to dismiss the indictment pursuant to HRPP Rule 48 and also filed a motion to continue trial. At a hearing on the same day, the circuit court found that, because trial had been continued at Appellant's request in order to undergo a mental examination to determine his fitness to proceed, the time that had passed since his prior motion to dismiss was chargeable to Appellant; thus, the circuit court denied Appellant's motion to dismiss. Additionally, the circuit court denied Appellant's motion to continue trial.

On December 7, 1992, the prosecutor fell ill and requested a continuance. Over Appellant's objection, the circuit court granted the continuance and rescheduled the trial for December 28, 1992.

On December 28, 1992, Appellant renewed his motion to dismiss pursuant to HRPP Rule 48, arguing that an additional twenty-one days should be added to the previously determined 175 days as a result of the circuit court's granting of the prosecution's request for a continuance. The circuit court declined to address Appellant's argument and proceeded to exclude an additional 97 days from the total time period due to "exceptional circumstances" of court congestion, thus reducing the includable time period to 99 days. In a written order, the circuit court gave a thorough explanation and time sequence outlining the excluded 97-day period, which began on May 26, 1992 and ended August 30, 1992. These exceptional circumstances included: the reassignment of two judges; the retirement of one judge; the temporary assignment of one judge to another court; the vacations of potential replacement judges; and a marked increase in jury trial demands.

Appellant's jury trial commenced on December 28, 1992. During the jury voir dire, two prospective jurors who had been seated in the jury box notified the trial court that they had problems with the English language. Prospective juror Jose engaged in the following exchange with the trial court:

THE COURT: Mr. Jose, tell me about yourself, how long have you been in [Hawai'i]?

THE JUROR: About eight years.

THE COURT: And is this eight years in [O'ahu]?

THE JUROR: Yes.

THE COURT: How long in the United States?

THE JUROR: Eight years.

THE COURT: And you finished high school?

THE JUROR: No.

THE COURT: How far did you get in high school?

THE JUROR: Third year in the Philippines.

THE COURT: And in what language did you have in high school?

THE JUROR: English.

Both the prosecution and Appellant challenged Mr. Jose's qualifications to sit on the jury and asked that he be excused for cause, pursuant to HRS § 612–4(2) (1985).[4] The court denied counsel's requests and stated:

I'm concerned because my feeling for a fair and impartial jury, who are representing an array of intelligence of the ethnicity of [Hawai'i], we do require people limited in educational ability and with a minor command of the English language [to be considered as qualified members of the jury pool]. I think if we were to exclude a vast number of immigrant citizens in this state, we would be eliminating about twenty percent of the jury members of the community. *Mr. Jose apparently understands English.*

(Emphasis added.) Appellant subsequently used a peremptory challenge to disqualify Mr. Jose from the jury.

Similarly, prospective juror Low stated that she did not "speak much English" and did not "understand how to read and write" English. The following conversation between the trial court and Mrs. Low ensued:

THE COURT: Mrs. Low, how long have you been in [Hawai'i]?

THE JUROR: I think about twenty-six, twenty-seven years.

. . . .

THE COURT: How much education you have?

THE JUROR: I only go to A, B, C school and then I drop off.

THE COURT: Where do you work?

THE JUROR: I work Island Laundry Department.

. . . .

THE COURT: You work. You have boss then?

THE JUROR: Yes.

THE COURT: Your boss speak what language?

THE JUROR: English.

THE COURT: Any trouble understanding your boss?

THE JUROR: Sometimes.

THE COURT: ... Any reason why you cannot serve as a juror?

THE JUROR: I don't understand how to read and write. I don't understand too much, maybe make wrong.

THE COURT: You can talk English, is that right? You can understand English?

THE JUROR: Not so much.

THE COURT: Anything I told you so far you don't understand?

THE JUROR: Little bit.

THE COURT: What part you don't understand?

THE JUROR: About I know how to judge the person ... I don't know how to judge a person right or wrong.

THE COURT: Maybe when you are on the jury, maybe eleven people will help you.

Appellant challenged Mrs. Low for cause and moved to excuse her pursuant to HRS § 612–4(2). The trial court denied Appellant's request by stating, "Your request is denied. The court will note Mrs. Low has been in this country [for] twenty-seven years. She's worked in the laundry department and I'm not convinced that Mrs. Low does not understand the English language that would disqualify her from service which is under the constitution." No peremptory challenge was exercised to excuse Mrs. Low, and she remained to serve as a member of the jury panel that heard the case.

Following opening statements, and over Appellant's objection, the prosecution called Sandra Chang to testify. Chang testified that she was a public health nurse employed at the Wai'anae Transition Center, which was located on the Wai'anae school campus, for the past fifteen years. She testified that the complainant came to see her in November 1990 and that "she looked sad and crying and had a hard time talking." Chang testified that the complainant spent hours talking and

---

**4.** HRS § 612–4(2) (1985) provides:

A prospective juror is disqualified to serve as a juror if the prospective juror:

. . . .

(2) Is unable to read, speak, and understand the English language[.]

sitting with her. Chang then called the Children's Protective Service, which in turn called the Honolulu Police Department. Chang testified that the police subsequently arrived at the school and came to her office.

The prosecution then called as a witness the screening prosecutor (Prosecutor) for the case. Appellant objected to Prosecutor's forthcoming testimony as irrelevant and improper. The court overruled Appellant's objection, but granted Appellant a running objection to Prosecutor's testimony. Prosecutor testified that she "was assigned to take a look at [this] case and to determine whether to bring charges." Further, she testified that she met with the complainant on January 2, 1992, and the complainant "spoke about one incident where her father put his finger into her vagina and . . . put his penis on her buttocks and rubbed it against her and he put his hand on her breast." Prosecutor explained that she was the deputy prosecuting attorney who had presented the case to the grand jury on February 27, 1992. Prosecutor testified that she charged and presented to the grand jury two separate incidents disclosed to her by the complainant. According to Prosecutor, the first alleged incident that was reported occurred on October 27 and 28, 1990, and the second reported alleged incident occurred sometime between September 1, 1990 and October 26, 1990.

Prosecutor testified that she had been a deputy prosecuting attorney for eight and a half years and explained that, during her numerous interviews with abused children,

"it is very common that the child will disclose to me additional sex acts that were not previously disclosed to the detective or social worker who initially interviewed them in the case."

On cross-examination, Prosecutor testified that the complainant first disclosed the second alleged incident during their initial conversation.

The prosecution then called to the witness stand, in order, Honolulu Police Officer Andrew Lum, the complainant, Honolulu Police Officer Ned Campbell, and Paulette Baron (complainant's mother and Appellant's ex-wife). Officers Lum and Campbell testified about their involvement in the case. The complainant and Paulette Baron testified about the alleged incidents. Following Officer Campbell's testimony, the prosecution sought to introduce into evidence a videotaped conversation between the complainant and Officer Campbell that took place on November 14, 1990. Appellant objected to the introduction of the tape, arguing that the tape would be "bolstering, redundant, [and] a denial of the right to confront[.]" Additionally, Appellant argued that the videotape did not comply with Hawai'i Rules of Evidence (HRE) Rule 616 (1985).[5] The trial court overruled Appellant's objection and permitted the prosecution to move the tape into evidence upon the condition that the prosecution redact from the tape certain statements that violated HRE Rule 616.

5.  HRE Rule 616 provides in pertinent part:

(a) This rule applies only to a proceeding in the prosecution of an abuse offense or sexual offense alleged to have been committed against a child less than sixteen years of age at the time of the offense, and applies only to the statements or testimony of that child.

(b) The recording of an oral statement of the child made before the proceeding begins is admissible into evidence if:
1.  No attorney of either party was present when the statement was made;
2.  The recording is both visual and aural and recorded on film or videotape or by other electronic means;
3.  The recording equipment was capable of making an accurate recording, the operator of the equipment was competent, and the recording is accurate and unaltered;

4.  The statement was not made in response to questioning calculated to lead the child to make a particular statement;
5.  Every voice on the recording and every person present at the interview is identified;
6.  The person conducting the interview of the child in the recording is present at the proceeding and available to testify for or be cross-examined by either party and every other person present at the interview is available to testify;
7.  The defendant or the attorney for the defendant is afforded discovery of the recording before it is offered into evidence; and
8.  The child is present to testify.

(c) If the electronic recording of the statement of a child is admitted into evidence under this section, either party may call the child to testify, and the opposing party may cross-examine the child.

On cross-examination of Paulette Baron, Appellant attempted to elicit testimony that contradicted the complainant's testimony regarding the time of day that the first alleged incident occurred. The prosecution objected to this line of questioning, arguing that Appellant was improperly attempting to present an alibi defense without filing a notice of alibi. Appellant countered that he was not presenting an alibi defense and, further, that he had been accorded no prior notice that the prosecution intended to elicit testimony regarding the time frame of the events. Because the trial court determined that Appellant was attempting to present an alibi defense, the trial court rejected Appellant's argument and sustained the objection; thus, preventing Appellant from pursuing his line of inquiry.

At the conclusion of Paulette Baron's testimony, the prosecution rested. The defense called Alfred Baron (the complainant's brother and Appellant's son), Appellant, and Eugene Obara to testify. At the conclusion of closing statements, the court instructed the jury.

The jury found Appellant guilty as to one count of sexual assault in the second degree and two counts of sexual assault in the fourth degree, all of which concerned the first reported incident. He was acquitted as to the remaining counts. Appellant was subsequently sentenced to serve a ten-year prison term in connection with the conviction of sexual assault in the second degree and two one-year prison terms in connection with the convictions of the two sexual assault in the fourth degree charges, all terms to be served concurrently.

This appeal followed.

## II. STANDARD OF REVIEW

■ "When interpreting rules promulgated by the court, principles of statutory construction apply. Interpretation of a statute is a question of law which we review *de novo*. Therefore, interpretation of HRPP Rule 48 is a question of law reviewable *de novo*." *State v. Lau*, 78 Hawai'i 54, 58, 890 P.2d 291, 295 (1995) (citations omitted).

The standard of review for statutory construction is well-established. The interpretation of a statute is a question of law which this court reviews *de novo*. In addition, our foremost obligation is to ascertain and give effect to the intention of the legislature[,] which is to be obtained primarily from the language contained in the statute itself. And where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning.

*State v. Wells*, 78 Hawai'i 373, 376, 894 P.2d 70, 73 (1995) (internal quotations and citations omitted)

■ The standard on appeal for review of evidentiary rulings depends on the particular rule of evidence at issue. *Kealoha v. County of [Hawai'i]*, 74 Haw. 308, 319, 844 P.2d 670, 676 (1993). Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard. *Id.*

Once a trial court has determined that the evidence is relevant, it must often balance its probative value against the danger of unfair prejudice before allowing its admission under HRE 403. *Kaeo v. Davis*, 68 Haw. 447, 719 P.2d 387 (1986). As we noted in *Kealoha*, "[in *Kaeo* we] concluded that the determination of the admissibility of relevant evidence under HRE 403 is eminently suited to the trial court's exercise of its discretion because it requires a 'cost-benefit calculus' and a 'delicate balance between probative value and prejudicial effect[.]'" *Kealoha*, 74 Haw. at 315, 844 P.2d at 674.

Consequently, we apply an abuse of discretion standard in determining whether the trial court erred: (1) in permitting a deputy prosecuting attorney to testify on behalf of the prosecution; (2) in admitting the testimony of Sandra Chang; (3) in admitting a tape recorded statement of the complainant; and (4) in precluding Appellant from presenting testimony that the trial court determined to be alibi testimony.

## III. DISCUSSION

### A. Rule 48

As we have noted, HRPP Rule 48(c)(2) provides that "periods of delay resulting

from congestion of the trial docket when the congestion is attributable to exceptional circumstances shall be excluded from the computation of the time for trial commencement." In *State v. Lord*, 63 Haw. 270, 272, 625 P.2d 1038, 1040 (1981), we held that unique, nonrecurring events are deemed "exceptional circumstances." Further, "[i]n order for court congestion to qualify as 'exceptional,' as opposed to usual, there must be a showing of deviation from the norm." *State v. Caspino*, 73 Haw. 256, 257, 831 P.2d 1334, 1335 (1992). Moreover, a temporary "imbalance" that causes court congestion resulting in foreseeable delay may also be excludable pursuant to HRPP Rule 48(c)(2). *See generally Caspino*, 73 Haw. at 258, 831 P.2d at 1136.

In *Lord*, we held that court congestion caused by an unusual amount of indictments returned by the grand jury was attributable to "exceptional circumstances" and, therefore, that the trial court was justified in excluding the period of delay. *Lord*, 63 Haw. at 273, 625 P.2d at 1041.

Similarly, in *State v. Herrera*, 63 Haw. 405, 629 P.2d 626 (1981), we upheld the "exceptional circumstances" exclusion on the grounds that, during the relevant period, there was: a shortage of judges to hear criminal cases in the first circuit due to the resignation of two judges; the need for two replacement judges; the need for a newly assigned criminal judge to carry a lighter work load in order to complete his family court cases; and an increase in the number of indictments.

In *Caspino, supra*, we remained consistent with our earlier holdings in *Lord* and its progeny; however, we rejected the lower court's "exceptional circumstances" exclusion because the record was "bereft" of any facts to support the trial court's conclusion that the time between defendant's arraignment and initial trial date was a result of **exceptional** court congestion. *Caspino*, 73 Haw. at 258, 831 P.2d at 1334 (emphasis in original).

■ In the instant case, the circumstances that caused the court's congestion and delay are consistent with the facts in *Lord* and *Herrera* and distinct from the facts in *Caspi-*

*no*. The trial judge specifically explained that court congestion was caused by a 97–day temporary delay that deviated from the norm. Further, the trial court subtracted additional periods of delay that were caused by Appellant. Consequently, we hold that the trial court's finding that the 97–day delay was caused by unique, nonrecurring events and its decision to exclude those days from the six-month time period due to "exceptional circumstances" were not erroneous. Likewise, the trial judge did not err when it excluded from the six-month time period any delays caused by Appellant. Therefore, we hold that Appellant's HRPP Rule 48 motions were properly denied.

**B.** *HRS § 612–4(2)—Grounds for prospective juror disqualification*

Appellant contends that the failure of the court to excuse for cause two prospective jurors who did not understand English, as required by HRS § 612–4(2), prevented him from fully exercising his right to three peremptory challenges and ultimately left him unable to disqualify one of the two jurors, thus creating undue prejudice. We disagree and hold that the trial court's refusal to excuse for cause prospective jurors Jose and Low did not violate HRS § 612–4(2).

■ Generally, the paramount question in determining whether to excuse for cause a prospective juror is whether the defendant would be afforded a fair and impartial trial based on the law and evidence, with the prospective juror as a member of the jury. In addressing this question, much must be left to the sound discretion of the trial judge who is in a better position than the appellate court to ascertain from the answers of the juror whether the juror is able to be fair and impartial. *Territory v. Johnson*, 16 Haw. 743, 754 (1905); *McKeague v. Talbert*, 3 Haw.App. 646, 656, 658 P.2d 898, 906 (1983).

■ However, when the basis for this determination derives from the language of a statute, we review the issue as a question of law and apply the *de novo* standard. *Wells*, 78 Hawai'i at 376, 894 P.2d at 73. Additionally, "in determining the purpose of the statute, we are not limited to the words of the

statute to discern the underlying policy which the legislature seeks to promulgate ... [but may] look to relevant legislative history[.]" *Id.* (citations and internal quotation marks omitted).

■ A strict interpretation of HRS § 612–4(2) indicates that a prospective juror must be excused for cause only if that person cannot read, speak, *and* understand English. The language of the statute clearly states that a juror must be *unable* to do *all three* in order to be excused for cause. For example, if the prospective juror cannot read or speak English, but can understand English, then that person should not be excused for cause pursuant to § 612–4(2). Put differently, if the prospective juror satisfies any one of the three qualifiers, regardless of his or her ability to satisfy the other two, then that prospective juror need not be excused for cause pursuant to HRS § 612–4(2).

An examination of the legislative history of HRS § 612–4(2) sheds very little light as to the legislature's intent in promulgating this statute. The legislature briefly noted that a prospective juror should be disqualified if that person has "insufficient knowledge" of the English language. Hse. Stand.Comm.Rep. No. 542, in 1973 House Journal, at 996; Sen.Stand.Comm.Rep. No. 754, in 1973 Senate Journal, at 943. This cryptic comment does not alter the plain meaning of the statute. Conversely, it supports the contention that a prospective juror who can speak and understand English, but cannot read English, need not be excused for cause pursuant to HRS § 612–4(2).

■ In the present case, the trial court addressed the prospective jurors' ability to read, speak, and understand English. The trial court entered into a colloquy with the prospective jurors who alleged an inability to read, speak, or understand the English language. Relevant to this appeal, the trial

court questioned Jose and Low in an effort to determine whether either should be excused for cause pursuant to HRS § 612–4(2). Both Jose and Low responded to the trial court's questions by speaking English. The trial court determined that both Jose and Low spoke and understood English well enough to serve as jurors. In making this determination, the trial court stressed that, in order to have a fair and impartial jury, the court must not exclude jury venirepersons who have a limited educational background and a minor command of the English language. Upon a review of the record, we agree with the trial court's determination that Jose and Low understood English. Therefore, because Jose and Low were able to speak and understand English, we hold that the trial court was in compliance with HRS § 612–4(2) in refusing to excuse Jose and Low for cause.[6]

### C. *Prosecutor's testimony regarding credibility*

At the time of trial, the Hawaiʻi Code of Professional Responsibility DR 7–106(C)(4) provided in relevant part:

> In appearing in his [or her] professional capacity before a tribunal, a lawyer shall not ... [a]ssert his [or her] personal opinion as to the justness of a cause, as to the credibility of a witness, ... or as to the guilt or innocence of an accused; but he [or she] may argue, on his [or her] analysis of the evidence, for any position or conclusion with respect to the matters stated herein.

Since the trial, we abrogated the Hawaiʻi Code of Professional Responsibility in favor of the Hawaiʻi Rules of Professional Conduct. Despite the change, we have remained consistent in our policy of promoting fair and proper prosecutorial conduct. "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This

---

**6.** We note that the trial court may excuse for cause prospective jurors if their presence on the jury would implicate a party's right to a fair and impartial trial. The following two examples illustrate such circumstances. If the trial court determines that the jurors must be able to read evidentiary documents, such as in a contract case, the trial court may exclude for cause a prospective juror who is not able to read. The trial court may also excuse for cause a prospective juror if the court is convinced that the prospective juror is unable to understand any aspect of the forthcoming trial that a juror should reasonably be expected to understand. As previously indicated, much is left to the sound discretion of the trial court in determining the propriety of excuses for cause of a prospective juror.

responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." Hawai'i Rules of Professional Conduct, Rule 3.8, Comment [1] (1994).

█ Thus, prosecutors are bound to refrain from expressing their personal views as to a defendant's guilt or the credibility of witnesses. *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *State v. Marsh,* 68 Haw. 659, 660, 728 P.2d 1301, 1302 (1986); ABA Standards for Criminal Justice, Standard 3–5.8 (1980). The Supreme Court has observed that a prosecuting attorney's "improper suggestions, insinuations, and especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *Marsh,* 68 Haw. at 661, 728 P.2d at 1302 (quoting *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)).

█ In this case, the gist of Prosecutor's testimony focused on her professional experience with sexual assault victims. She testified about the interview process with alleged sexual assault victims, and specifically, that it is common for the alleged victims to disclose additional facts during the interview process. Further, she testified that she made the decision as to whether charges should be filed and that she decided to present the case to the grand jury. It is clear that Prosecutor's testimony was rendered in her professional capacity as a deputy prosecuting attorney and that her testimony no doubt supported the complainant's testimony.

The presentation of Prosecutor's testimony exceeded the bounds of responsible prosecutorial conduct. As the initial prosecutor who reviewed the case, she testified that she made the determination to charge Appellant. Therefore, by bringing charges, she impliedly

7. HRE Rule 401 provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

8. HRE Rule 403 provides:

found the complainant's allegations to be truthful. As this case was a case that concerned the credibility of the complainant, the testimony of Prosecutor unfairly influenced the jury.

█ Prosecutors are subject to certain prohibitions as officers of the court. It is patently unfair for the prosecution to call as a witness another member of the prosecuting team, albeit not the trial attorney, in effect to bolster the credibility of a witness. To allow the testimony would create a combustible conflict of interest in the criminal justice system, which would be impossible to contain. Consequently, we hold that the trial court abused its discretion by not precluding the testimony of Prosecutor. The prejudice to Appellant is patently clear and warrants a reversal in this case. We therefore vacate the guilty verdicts and remand the case to the circuit court for a new trial.

Although this case is remanded to the circuit court for a new trial, we address the following issues in order to assist the trial court in future proceedings.

D. *Testimony of the school nurse*

█ Sandra Chang testified that the complainant came to see her and "looked real sad and [she was] crying and [she] had a hard time talking." Appellant contends that Chang's testimony was irrelevant and prejudicial. We disagree. Chang's testimony was relevant because it is of "consequence to the determination" as to whether the complainant was sexually assaulted. *See* HRE Rule 401.[7] We hold that the probative value of Chang's testimony was not substantially outweighed by its prejudicial effect pursuant to HRE 403.[8] Therefore, we hold that the trial court did not abuse its discretion in admitting Sandra Chang's testimony.

**Exclusion of relevant evidence on grounds of prejudice, confusion or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

### E. Admission of the complainant's statement on video tape

Appellant argues for the first time in his opening brief that the admission of the complainant's videotaped statement violated HRE Rules 402[9] and 403.

At trial, Appellant did not object to the admission of the video tape as being irrelevant.

This court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistake.

*State v. Kupau,* 76 Hawai'i 387, 393, 879 P.2d 492, 498 (1994) (citation omitted). Nevertheless, where plain error has been committed and substantial rights have been affected thereby, the error may be noticed even though it was not brought to the attention of the trial court. *Id.*

In the present case, the complainant's videotaped interview was presented to the jury pursuant to HRE Rule 616(b),[10] which permits the introduction of videotaped statement's of child-victims in sexual assault cases, provided, *inter alia,* that the child is present to testify on cross-examination. Appellant acknowledges that the videotape was admissible under HRE Rule 616; however, Appellant contends that the prejudicial impact of the videotape substantially outweighed its probative value. We disagree.

The videotaped interview was relevant because it enabled the jury to view whether the complainant's behavior was consistent with a child of her age who had experienced a recent upsetting event. The trial commenced December 28, 1992, more than two years after the date of the alleged offenses, whereas the videotape interview took place on November 15, 1990. We hold that its probative value was not substantially outweighed by its prejudicial effect. Consequently, the trial court did not commit plain error in permitting the jury to view the videotaped interview.

Although it was not raised on appeal, we briefly address Appellant's constitutional right to confront his accuser. The confrontation clause of the Hawai'i Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witness against the accused[.]" Haw. Const. art. I, § 14. The confrontation clause contained in the sixth amendment to the United States Constitution, made applicable to the state through the fourteenth amendment, is virtually identical. *State v. Apilando,* 79 Hawai'i 128, 131, 900 P.2d 135, 138 (1995). "The right of confrontation affords the accused both the opportunity to challenge the credibility and veracity of the prosecution's witnesses and an occasion for the jury to weigh the demeanor of those witnesses." *Id.* (quoting *State v. Ortiz,* 74 Haw. 343, 360, 845 P.2d 547, 555, *reconsideration denied,* 74 Haw. 650, 849 P.2d 81 (1993)) (citation and emphasis omitted).

In the present case, on cross-examination, prior to the introduction of the videotape, Appellant questioned the complainant as to what she said during her videotaped interview. We hold that the cross-examination of complainant regarding her conversation with Officer Campbell, prior to the introduction of the videotape, satisfied Appellant's constitutional right to confront his accuser. *Cf. Apilando* (presentation of videotape evidence in lieu of accuser's direct testimony violated the defendant's right of confrontation).

### F. Alibi testimony

The trial court precluded Appellant from adducing testimony that would have further explored the question, first raised by the prosecution, of the time of day that the first alleged incident occurred. The trial court concluded that because Appellant failed to

---

9. HRE Rule 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of [Hawai'i], by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible."

10. *See supra* note 5.

## 118

file a notice of alibi [11] he could not elicit such testimony. We disagree.

 "An alibi defense does not dispute the evidence that the crime charged was committed in the manner alleged; rather it merely challenges the identity of the perpetrator." *State v. Gabrillo,* 10 Haw.App. 448, 455 n. 2, 877 P.2d 891, 894 n. 2 (1994) (quoting *State v. Pearson,* 234 Kan. 906, 916, 678 P.2d 605, 617 (1984)). In the present case, Appellant did not challenge the identity of the "perpetrator"—*i.e.,* that someone else actually committed the crime; rather, he attempted to show that the complainant was making false accusations. Appellant's attempt to elicit testimony disputing the time of day that the incident occurred was an attempt to impeach the complainant and not an attempt to establish an alibi. Because Appellant attempted to impeach the complainant's credibility and did not attempt to elicit alibi evidence, we hold that he was not required to file a notice of alibi pursuant to HRPP Rule 12.1. Accordingly, the trial court abused its discretion in disallowing this line of questioning.

### IV. CONCLUSION

For the foregoing reasons, we hold that: (1) the trial court did not err in denying Appellant's motion to dismiss pursuant to HRPP Rule 48; and (2) the trial court did not err in refusing to excuse for cause jurors Jose and Low. However, we hold that the trial court committed reversible error by admitting the testimony of the screening prosecutor. As such, we vacate Appellant's conviction and sentence and remand the case to the circuit court for a new trial.

---

11. The trial court concluded that testimony indicating the time of day that the first incident occurred was alibi testimony, and, therefore, Appellant was required to provide the prosecution with a notice of alibi pursuant to HRPP Rule 12.1. The court precluded Appellant from eliciting this testimony because he failed to file a notice of alibi. HRPP Rule 12.1(a) provides:

*Notice by Defendant.* If a defendant intends to rely upon the defense of alibi, he [or she] shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the prosecutor in writing of such intention and file a copy of such notice with the court.