Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000115
12-NOV-2014
09:01 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Plaintiff-Appellee,
vs.
JOSEPH VAIMILI, Defendant-Appellant.

CAAP-12-0000115

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR NO. 09-1-0410)

NOVEMBER 12, 2014

NAKAMURA, CHIEF JUDGE, AND LEONARD AND REIFURTH, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Joseph Vaimili (Vaimili) in an amended complaint with kidnapping, first-degree terroristic threatening, first-degree promoting prostitution, and carrying or use of a firearm in the commission of a separate felony. The charges stemmed from allegations by the complaining witness (CW) that Vaimili became her pimp, and then Vaimili kidnapped her, physically abused her, and threatened her at gun point.

Vaimili was released on bail and appeared for certain pre-trial proceedings and for jury selection. However, after the jury was selected, on the day the jury was to be sworn in, Vaimili failed to appear. The Circuit Court of the First Circuit (Circuit Court)[1] granted two continuances which delayed the

---

[1] The Honorable Randal K.O. Lee presided.

swearing in of the jury for almost a month. After attempts to locate or contact Vaimili during this period failed, the Circuit Court proceeded to swear in the jury and continue with the trial. The jury found Vaimili guilty as charged on all counts. Vaimili was eventually apprehended in Texas over a year later and was returned to Hawai'i for sentencing. The Circuit Court sentenced Vaimili to a total of 40 years of imprisonment.

Vaimili appeals from the Judgment of Conviction and Sentence (Judgment) filed on February 21, 2012. On appeal, Vaimili contends that his convictions should be vacated because: (1) the charges against him were fatally defective due to the State's charging him in the disjunctive, which he claims resulted in the failure to provide him with adequate notice of the alleged offenses; (2) his trial counsel provided ineffective assistance by failing to raise the charging issue; and (3) the Circuit Court deprived Vaimili of his constitutional right to be present at trial by holding the trial in his absence after he failed to appear.

We hold that: (1) consistent with the Hawai'i Supreme Court's recent decision in State v. Codiamat, 131 Hawai'i 220, 317 P.3d 664 (2013), the State's charging Vaimili in the disjunctive did not render his charges defective; (2) Vaimili's trial counsel's failure to raise the charging issue did not constitute ineffective assistance of counsel; and (3) the Circuit Court acted within its discretion, and did not violate Vaimili's right to be present at trial, when it only proceeded with the trial after it became apparent that Vaimili was voluntarily absent, that he could not be located, and that it was unlikely he would soon return. Accordingly, we affirm the Circuit Court's Judgment.

BACKGROUND

I.

On October 13, 2009, the State charged Vaimili by amended complaint with (1) kidnapping, in violation of Hawaii

2

Revised Statutes (HRS) § 707-720(1)(e) (Supp. 2013);[2] (2) kidnapping, in violation of HRS § 707-720(1)(d) (Supp. 2013);[3] (3) first-degree terroristic threatening, in violation of HRS § 707-716(1)(e) (Supp. 2008);[4] (4) first-degree promoting prostitution, in violation of HRS § 712-1202(1)(a) (Supp. 2008);[5] and (5) carrying or use of a firearm in the commission of a separate felony, in violation of HRS § 134-21 (Supp. 2011).[6]

---

[2] HRS § 707-720(1)(e) provides that "[a] person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to . . . [t]errorize that person or a third person[.]"

[3] HRS § 707-720(1)(d) provides that "[a] person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to . . . [i]nflict bodily injury upon that person or subject that person to a sexual offense[.]"

[4] At the time relevant to this case, HRS § 707-716(1)(e) provided: "A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening . . . [w]ith the use of a dangerous instrument." At that time, HRS § 707-715 (1993) defined the offense of terroristic threatening, in pertinent part, as follows: "A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person . . . : (1) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]" (Format altered.)

[5] At the time relevant to this case, HRS § 712-1202(1)(a) provided:

(1) A person commits the offense of promoting prostitution in the first degree if the person knowingly:

    (a)    Advances prostitution by compelling a person by force, threat, or intimidation to engage in prostitution, or profits from such coercive conduct by another[.]

[6] HRS § 134-21 provides, in relevant part:

(a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not; provided that a person shall not be prosecuted under this subsection [for certain separate felonies not relevant to this case].

(b) A conviction and sentence under this section shall be in addition to and not in lieu of any conviction and sentence for the separate felony; provided that the sentence imposed under this section may run concurrently or consecutively with the sentence for the separate felony.

The amended complaint read in relevant part as follows:

COUNT I: On or about the 4th day of March, 2009, to and including the 5th day of March 2009, in the City and County of Honolulu, State of Hawaii, JOSEPH VAIMILI did intentionally or knowingly restrain [the CW], with intent to terrorize her or a third person, thereby committing the offense of Kidnapping, in violation of Section 707-720(1)(e) of the [HRS].

. . . .

COUNT II: On or about the 21st day of February, 2009, in the City and County of Honolulu, State of Hawaii, JOSEPH VAIMILI did intentionally or knowingly restrain [the CW], with intent to inflict bodily injury upon her or subject her to a sexual offense, thereby committing the offense of Kidnapping, in violation of Section 707-720(1)(d) of the [HRS].

. . . .

COUNT III: On or about the 4th day of March, 2009, to and including the 5th day of March, 2009, in the City and County of Honolulu, State of Hawaii, JOSEPH VAIMILI, threatened, by word or conduct, to cause bodily injury to [the CW], with the use of a dangerous instrument, to wit, an instrument that falls within the scope of Section 706-660.1 of the [HRS], with the intent to terrorize, or in reckless disregard of the risk of terrorizing [the CW], thereby committing the offense of Terroristic Threatening in the First Degree, in violation of Section 707-716(1)(e) of the [HRS].

. . . .

COUNT IV: On or about the 18th day of February, 2009, to and including the 3rd day of March, 2009, in the City and County of Honolulu, State of Hawaii, JOSEPH VAIMILI did knowingly advance prostitution by compelling [the CW] by force, threat, or intimidation to engage in prostitution, or did knowingly profit from such coercive conduct by another, thereby committing the offense of Promoting Prostitution in the First Degree, in violation of Section 712-1202(1)(a) of the [HRS].

. . . .

COUNT V: On or about the 4th day of March, 2009, to and including the 5th day of March, 2009, in the City and County of Honolulu, State of Hawaii, JOSEPH VAIMILI did knowingly carry on his person or have within his immediate control or did intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, to wit, Kidnapping and/or any included felony offense of Kidnapping, whether the firearm was loaded or not, and whether operable or not, thereby committing the offense of Carrying or Use of a Firearm in the Commission of a Separate Felony, in violation of Section 134-21 of the Hawaii Revised Statutes. JOSEPH VAIMILI commits the offense of Kidnapping, in violation of Section 707-720(1)(e) of the

[HRS], if he intentionally or knowingly restrain [sic] [the CW] with intent to terrorize her or a third person.

Each count also alleged that if convicted of the charged offense or an included felony offense, Vaimili may be subject to an extended term of imprisonment as a multiple offender in accordance with HRS §§ 706-661 and 706-662(4)(a) (Supp. 2013).

## II.

### A.

On April 6, 2010, the Circuit Court held a hearing on certain pre-trial motions, at which time Vaimili's trial counsel asked that Vaimili's presence be waived. The State informed the Circuit Court that it had information that Vaimili had left Hawai'i. The State explained that the bond posted for Vaimili was $250,000 because of the high risk of his leaving Hawai'i, and that Vaimili's bail bonds person had gone to San Francisco to look for him. The Circuit Court ordered a trial call the following week and required Vaimili's presence in court.

On April 13, 2010, Vaimili was present in court. Ida Peppers (Peppers), who stated that she was the representative of Freedom Bail Bonds and that she was also Vaimili's employer, reported to the court that she and Linda Del Rio (Del Rio) were in California looking for another person and not Vaimili. Vaimili denied that he had traveled to the mainland while on bail. The Circuit Court, however, continued the hearing for a week to permit additional witnesses to be called on the question of whether Vaimili had left Hawai'i.

At the subsequent hearing, Shane Yaw (Yaw), a district court clerk, testified that on April 1st, Del Rio informed Yaw that Vaimili had forfeited his $250,000 bail and that Del Rio was going to travel to San Francisco to find Vaimili. However, Yaw did not know whether Vaimili had actually left the jurisdiction. Del Rio, an employee of Freedom Bail Bonds, testified that Vaimili never left Hawai'i and that she had traveled to California in search of two other people. The Circuit Court

5

concluded that the evidence presented was insufficient to prove an intentional violation of the conditions of bail by Vaimili. However, the Circuit Court found Del Rio's credibility was "an issue" and that Yaw was more credible. The Circuit Court modified Vaimili's bail conditions by imposing a curfew on Vaimili and subjecting Vaimili to electronic monitoring.

Vaimili was present for jury selection, which began in the morning on Monday, June 21, 2010, and was completed that afternoon. After the jury was selected, the Circuit Court informed the jurors, in the presence of Vaimili, that trial would resume on Wednesday at 9:00, and it instructed the jurors to present in the courthouse at 8:45. The Circuit Court informed the jurors that it would swear them in on Wednesday, and then proceed with opening statements and evidence.

B.

On Wednesday, June 23, 2010, Vaimili failed to appear. Vaimili's trial attorney (defense counsel) represented to the Circuit Court that he had spoken to Vaimili the day before because they had planned to meet, but Vaimili failed to show up for the meeting. Defense counsel explained that when he attempted to contact Vaimili by phone several times thereafter, Vaimili's "phone number" indicated that Vaimili was not accepting calls.

The Circuit Court asked counsel's position on how the case should proceed, in light of Vaimili's absence. The Circuit Court noted that it could proceed with trial in absentia because "Vaimili voluntarily absented himself from the trial[,]" or it could discharge the jury, which had not yet been sworn in. Defense counsel preferred to have Vaimili present during trial and requested a continuance until Vaimili "show[ed] up" or could be "picked up." The Circuit Court continued trial to the following Monday, June 28, 2010.

On June 28, 2010, the State filed a "Memorandum on Trial *In Absentia*[,]" asserting that: (1) Vaimili was present at the commencement of trial for jury selection; (2) Vaimili was present in court when the State confirmed that the CW was on Oʻahu and prepared to testify at trial; (3) Vaimili thereafter voluntarily absented himself from the proceedings by absconding; and (4) the public's interest in going forward with the trial outweighed Vaimili's right to be present. The State further represented that: (1) on June 15, 2010, Vaimili notified the Intake Service Center (ISC) that the telephone to which his electronic monitoring was attached had been disconnected, and that ISC had not heard from Vaimili since June 17, 2010, even though he had an appointment with ISC during the week of June 21, 2010; (2) since Vaimili's non-appearance in court on June 23, 2010, police officers and sheriffs had been actively searching for Vaimili on Oʻahu at places he was known to frequent, but have been unable to find him; (3) Vaimili had reportedly been at the Honolulu International Airport on June 23, 2010, preparing to board a flight to San Francisco; and (4) the CW had been brought from the mainland to Hawaiʻi to testify for trial, and that "[b]ecause Defendant has absconded, [the CW] is obligated to remain on the Island of Oahu for an additional week at significant expense, inconvenience and emotional distress to the [CW], who fears the Defendant and his friends will attempt to keep her from testifying against him."

In court on June 28, 2010, Vaimili's counsel informed the Circuit Court that Vaimili had not contacted counsel and that Vaimili had not been located by the bail bond company. The Circuit Court found that under Hawaiʻi Rules of Penal Procedure (HRPP) Rule 43, Vaimili had voluntarily absented himself from the proceedings. The Circuit Court called in the jury, advised the jurors that the trial would be continued to July 19, 2010, and asked if anyone would be unavailable. The Circuit Court excused

a juror who stated that she was going back to the mainland on July 15th and replaced her with the first alternate. The Circuit Court also asked the jurors whether they had heard anything about the case outside the courtroom. The Circuit Court questioned two jurors who answered affirmatively, outside the presence of the other jurors, and also gave counsel for Vaimili and the State the opportunity to question them. The two jurors stated that what they had heard would not affect their ability to be fair and impartial, and the Circuit Court kept the two jurors on the jury. The Circuit Court then addressed the entire jury panel and instructed them to return to court on July 19th.

During the June 28, 2010, proceedings, the Circuit Court also considered Vaimili's motion to dismiss his charges for alleged discovery violations, on which the State presented the testimony of a witness, and denied the motion. In addition, Natasha Cambra (Cambra), whose case had been consolidated with Vaimili's case for trial, pleaded guilty to unlawful imprisonment pursuant to a plea agreement. The Circuit Court continued trial to July 19, 2010.

On July 19, 2010, Vaimili still had not been located. Defense counsel stated that his last contact with Vaimili had been on June 22, 2010, the day after jury selection. Defense counsel further stated that he attempted to contact Vaimili a number of times through the phone number Vaimili provided, but Vaimili never responded to those calls. Defense counsel also stated that Peppers, the head of the bail bond company, confirmed that Vaimili could not be reached at his telephone number and that Peppers was presently on the mainland searching for Vaimili.

Defense counsel objected to a *trial in absentia*, arguing that the public interest in continuing the trial did not supercede Vaimili's right to be present and confront his accusers, and that the State had not shown that Vaimili was

voluntarily absent. The Circuit Court, citing HRPP Rule 43,[1] ruled in relevant part:

> [T]he defendant shall be considered to have waived the right to be present whenever a defendant initially present is voluntarily absent after the hearing or trial is commenced. In this particular case, Mr. Vaimili was informed that the -- after jury selection that the trial will commence at 9:00 on the 23rd. Mr. Vaimili was instructed to be here I believe at 8:30. He had been previously admonished by this court that irregardless of what anybody might tell him that he is required to be present at all proceedings and that's why the court even imposed conditions on Mr. Vaimili short of revoking his bail.
>
> As counsel recall there was a motion to revoke Mr. Vaimili's bail because of allegations that Mr. Vaimili had left the jurisdiction to the State of California, and the witness that would bear fruit to that was Ms. Del Rio. However, at the hearing Ms. Del Rio had indicated that that was not correct, and therefore the court had no basis to grant the motion. However, given the seriousness of the offense, the court nevertheless imposed the conditions that it did on Mr. Vaimili only later be confronted on June 23rd of Mr. Vaimili's failure to appear. The court even continued the matter to allow [defense counsel] or Ms. Del Rio to find Mr. Vaimili. And to this date, Mr. Vaimili has yet to appear before this court. Therefore, the court, under Rule 43 of the Hawaii Rules of Penal Procedure, will proceed without Mr. Vaimili's presence.

The Circuit Court then proceeded to swear in the jury. The Circuit Court instructed the jury that Vaimili had

---

[1] HRPP Rule 43 provides in relevant part:

　　(a) **Presence required.** The defendant shall be present at the arraignment, at the time of the plea, at evidentiary pretrial hearings, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

　　(b) **Continued presence not required.** The further progress of a pretrial evidentiary hearing or of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,

　　(1) is voluntarily absent after the hearing or trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial); or

　　(2) engages in conduct which is such as to justify exclusion from the courtroom.

Although HRPP Rule 43 was amended after the Circuit Court's ruling in this case, the above-quoted portions of HRPP Rule 43(a) and (b) that are relevant to this appeal have not changed.

"voluntarily elected not to be present at trial[,]" and that the jury shall not use or consider Vaimili's absence to determine his guilt or innocence of the charges and shall not use Vaimili's absence "as evidence that [he] is a person of bad character."

III.

The following evidence was adduced at trial. The CW was born and raised in South Dakota. The CW moved to Texas and began working as a prostitute in late 2008 to support her two young children, who alternated between living with her parents and her ex-boyfriend, the children's father. In January of 2009, when the CW was twenty-three years old, she moved to Hawai'i from Texas to work as a prostitute during the Pro Bowl. After moving to Hawai'i, the CW began working at the Golden Queen. The CW testified that the Golden Queen was a "massage parlor" and the girls working there "[were] having sex for money[.]"

According to the CW, in early February of 2009, Cambra,[8/] described by the CW as a friend who occasionally worked at the Golden Queen, invited the CW to a club for a drink. When Cambra picked her up from the Golden Queen, Vaimili was also in the car. At the club, Vaimili told the CW about his cars, money, and houses and assured the CW that he would take good care of her. The CW told Vaimili that her children were the reason she was working, and Vaimili promised her that she would be able to take care of them. Vaimili took the money that the CW had on her that night and became her pimp. Once a day, Vaimili collected the money that the CW earned from having sex with men at the Golden Queen.

Sometime later in February of 2009, Vaimili notified the CW that she would be working the "track," i.e., a street in Waikiki. The CW felt scared and uncomfortable about walking the streets, because she had never done it before. Once the CW

---

[8/] The CW used Cambra's nickname "Lexy" when referring to Cambra at trial. As previously noted, Cambra's case was consolidated with Vaimili's case for trial, but Cambra pleaded guilty pursuant to a plea agreement after the jury had been selected but before the jury was sworn.

started working the track, she moved out of the Golden Queen and lived at different hotels for short periods of time. Vaimili had rules for the CW when she was working the track, and he wanted her to be "in pocket[,]" which meant "[b]eing respectful to him, doing what he says and . . . listening."

The CW recalled several specific incidents that occurred during February and March of 2009. In one incident, Vaimili knocked the CW unconscious in an alley and then dragged her by the hair. In a second incident, Vaimili choked the CW in a hotel room for being disobedient until she blacked out. In a third incident, Vaimili hit the CW on the face with a lamp in her hotel room; grabbed her by the hair and pulled her back when she tried to run out the door; threw a two-liter bottle of coke, hitting the CW in the face; and told her, "Bitch, you're gonna learn. You better learn. I thought your learned last time." In a fourth and fifth incident, Vaimili whipped the CW with a white leather belt. During these whippings, Vaimili would not allow the CW to leave the room. In a sixth incident, Vaimili hit the CW on the back of the head five or six times with the CW's high-heeled shoe because she was not listening to him.

In early March of 2009, the CW returned to living at the Golden Queen. Vaimili became upset when he learned that the CW had been talking to Cambra's cousin, whom the CW was conversing with on a normal social basis as a friend. The CW was attempting to avoid Vaimili because she was scared of what he was going to do. One evening, while the CW was trying to avoid Vaimili, Cambra came to the Golden Queen to pick up the CW in a SUV. Cambra told the CW that Vaimili was not with Cambra. However, after the CW got in the SUV and Cambra began driving, the CW discovered that Vaimili was in the backseat of the SUV dressed all in black.

At Vaimili's direction, Cambra began driving toward the North Shore. Vaimili told the CW that he thought she "loved her kids" and "was working for her kids," and indicated that where they were going would be her "new track[.]" Vaimili had the CW

lean back in her seat.  The CW felt a gun pressed up against her face.  Vaimili told the CW that since she "liked pineapple so much [she] was gonna be living or sleeping with 'em[.]"  The CW pleaded with Vaimili for her life.

At some point, Cambra stopped the car.  Vaimili forced the CW out of the car and told her to lie face down on the ground.  Vaimili, with the gun pointed at the back of the CW's head, kept saying, "Bitch, I thought you loved your kids.  I thought you loved your kids."  When a car drove by, Vaimili pulled the CW up and threw her back into the car, telling her that she "was lucky."  In the car, Vaimili placed the gun in the CW's mouth, telling the CW that he "has [her] life, and if he wants to take it he will."  Vaimili dropped the CW off at the Golden Queen.

A day or two later, on March 6, 2009, Sheriff James Barnes, III (Sheriff Barnes), who was assigned to the Hawai'i Coalition Against Human Trafficking Task Force, went to the Golden Queen and asked the CW for identification.  The CW could not provide any identification, because Vaimili had her ID.  Sheriff Barnes testified that this concerned him, because "if a female does not have an ID in these types of establishments, normally she's not there on her own or someone is holding her ID for her."  The next night, sheriffs returned to the Golden Queen, and the CW told the sheriffs that she needed help.  Shortly thereafter, the CW met with a police detective and gave a recorded interview.  A day after the interview, the CW assisted the police by going with them on a drive and locating the spot where Vaimili had pulled her out of the car and held a gun to her head.

On July 22, 2010, the jury found Vaimili guilty as charged on all five counts.

IV.

On or about October 14, 2011, Vaimili was arrested in Texas and returned to Hawai'i for sentencing.

On February 21, 2012, Vaimili appeared before the Circuit Court for sentencing. The Circuit Court sentenced Vaimili to ten years of incarceration on Counts 1 and 2, five years of incarceration on Count 3, ten years of incarceration on Count 4, and twenty years of incarceration on Count 5.[2/] It imposed mandatory minimum terms of incarceration on each count based on Vaimili's status as a repeat offender. The Circuit Court ordered the sentences on Counts 1, 2, and 3 to run concurrently with each other, the sentence on Count 4 to run consecutively to the sentences on Counts 1, 2, and 3, and the sentence on Count 5 to run consecutively to the sentence on Counts 1, 2, 3, and 4. In sum, the Circuit Court sentenced Vaimili to forty years of imprisonment. That same day, the Circuit Court entered its Judgment.

DISCUSSION

I.

A.

Vaimili argues that because the charges in the amended complaint were phrased in the disjunctive, they failed to provide him with adequate notice of "which specific acts in those statutes were being relied upon as the basis for the accusations against him[.]" On this basis, he claims that the charges were "fatally defective." "[W]hether a complaint provides sufficient notice to a defendant is reviewed under the de novo, or right/wrong, standard." Codiamat, 131 Hawai'i 220, 223, 317 P.3d 664, 667 (2013). As explained below, we conclude that Vaimili's challenge to the sufficiency of the charges is without merit.

B.

The criminal process begins when the defendant is charged with a criminal offense. State v. Sprattling, 99 Hawai'i 312, 317, 55 P.3d 276, 281 (2002). The charging instrument must

---

[2/] Vaimili chose not to exercise his right of allocution. Defense counsel stated, without further explanation, that Vaimili indicated to him that there were "mitigating factors that precluded him from being here for his own trial and that he felt -- he believed that his life was in jeopardy."

inform the defendant of "the nature and cause of the accusation[,]" Haw. Const. art. I, § 14, "and sufficiently apprise the defendant of what he or she must be prepared to meet to defend against the charges." Codiamat, 131 Hawai'i at 223, 371 P.3d at 667 (internal quotation marks, citation, and brackets omitted). In determining whether a charge is sufficient, the relevant inquiry is whether it gave the accused "fair notice" of the charged offense. See State v. Mita, 124 Hawai'i 385, 390, 245 P.3d 458, 463 (2010); State v. Nesmith, 127 Hawai'i 48, 54, 276 P.3d 617, 623 (2012).

C.

Vaimili's claim that the State's disjunctive pleading in this case was impermissible and rendered the charges fatally defective is refuted by the Hawai'i Supreme Court's recent decision in Codiamat, 131 Hawai'i 220, 317 P.3d 664. In Codiamat, the supreme court concluded that "the use of the disjunctive may be appropriate when it provides notice to the defendant that the State may attempt to prove guilt by showing that the defendant committed any one of multiple related acts. This alerts the defendant that he or she must be prepared to defend against each of the charged alternatives." Codiamat, 131 Hawai'i at 226, 317 P.3d at 670.

The supreme court rejected a rule that would prohibit disjunctive pleading and stated that "Hawai'i courts have never enforced a strict rule against charging in the disjunctive." Id. at 223, 317 P.3d at 667. The court held that "when charging a defendant under a single subsection of a statute, the charge may be worded disjunctively in the language of the statute as long as the acts charged are reasonably related so that the charge provides sufficient notice to the defendant." Id. at 227, 317 P.3d at 671. The court further held that "states of mind may be charged disjunctively." Id. Applying these principles, the court held that Codiamat's charge was sufficient in that "[t]he acts charged disjunctively were contained within a single subsection of a statute and were reasonably related so that the

14

complaint sufficiently apprised [Codiamat] of the nature of the charged acts and allowed [Codiamat] to prepare a defense." Id. at 221, 317 P.3d at 665.

Here, the disjunctive pleading that Vaimili claims rendered his charges fatally defective involved reasonably related acts contained within a single subsection of a statute or different states of mind. Vaimili challenges the following instances, highlighted below, of the State's charging in the disjunctive:

(1) Count 1 -- kidnapping in violation of HRS § 707-720(1)(e) -- Vaimili did intentionally **or** knowingly restrain the CW, with intent to terrorize the CW **or** a third person.

(2) Count 2 -- kidnapping in violation of HRS § 707-720(1)(d) -- Vaimili did intentionally **or** knowingly restrain the CW, with intent to inflict bodily injury upon her **or** subject her to a sexual offense.

(3) Count 3 -- first-degree terroristic threatening in violation of HRS § 707-716(1)(e) -- Vaimili threatened, by word **or** conduct, to cause bodily injury to the CW, with the use of a dangerous instrument, with the intent to terrorize, **or** in reckless disregard of the risk of terrorizing the CW.

(4) Count 4 -- first-degree promoting prostitution in violation of HRS § 712-1202(1)(a) -- Vaimili did knowingly advance prostitution by compelling the CW by force, threat, or intimidation to engage in prostitution, **or** did knowingly profit from such coercive conduct by another.

(5) Count 5 -- carrying or use of a firearm in the commission of a separate felony in violation of HRS § 134-21 -- Vaimili did knowingly carry on his person **or** have within his immediate control **or** did intentionally use or threaten to use a firearm while engaged in the commission of a separate felony.

The instances of disjunctive charging that Vaimili challenges involved reasonably related acts under a single subsection of a statute or different states of mind, which the

Codiamat court held can be charged disjunctively. The potential "Jendrusch"[10] exception to the permissibility of disjunctive pleading identified by the supreme court in Codiamat -- the joining of "charges of violations of multiple sections or subsections of a statute[,]" id. at 226, 317 P.3d at 670 -- is not implicated by the charges in this case.

D.

We conclude that the charges against Vaimili gave him fair notice of the nature and cause of the accusation against him and what he needed to be prepared to meet. It is well-settled that where an offense statute establishes alternative means of committing an offense, the State is allowed to prove in the disjunctive, that is, prove the offense was committed by establishing any of the alternative means. See State v. Batson, 73 Haw. 236, 249-51, 831 P.2d 924, 931-32 (1992) (concluding that the offense of second-degree murder can be proven by establishing that it was committed by the alternative means of murder by commission or murder by omission); Nesmith, 127 Hawai'i at 61, 276 P.3d at 630 (concluding that the offense of driving under the influence of an intoxicant can be proven by the alternative means of driving while impaired by alcohol or driving with .08 or more grams of alcohol per two hundred ten liters of breath).

If the State can prove alternative means in the disjunctive, then charging alternative means in the disjunctive serves to provide a defendant with fair notice. Put another way, disjunctive charging provides a defendant with fair notice because it accurately reflects what the defendant must be prepared to meet, and thus, satisfies due process. For example, if an offense can be committed by alternative means A or B, the State can establish the defendant's guilt by proving either means A or means B. Because the State's proof of either means A or means B will suffice, charging in the disjunctive serves to provide a defendant with fair notice that he or she must be

_____

[10] State v. Jendrusch, 58 Haw. 279, 567 P.2d 1242 (1977).

16

prepared to defend against both means A and means B. A defendant provided with notice that the State can obtain a conviction by proof of either means A or means B would rationally conclude that a defense against both means A and means B must be prepared. On the other hand, charging in the conjunctive may lull a defendant into erroneously believing that he or she can defeat the charge by refuting either means A *or* means B, thereby prejudicing the defendant by causing the defendant to only prepare a defense as to one of these means.

In this case, the State's disjunctive charging served to provide Vaimili with fair notice that the State could prove the charges against him through proof of alternative acts or states of mind. Vaimili does not demonstrate that he was prejudiced or unfairly surprised by the State's pleading in the disjunctive. Nor does Vaimili assert that he would have changed his defense had the amended complaint charged him in the conjunctive. We conclude that Vaimili has failed to show that his charges were rendered fatally defective by the State's charging in the disjunctive.

E.

Vaimili's reliance on State v. Jendrusch, 58 Haw. 279, 567 P.2d 1242 (1977), and State v. McCarthy, No. 29701, 2010 WL 3433722 (Hawai'i App. Aug. 31, 2010) (mem.), to support his disjunctive pleading claim is misplaced. In Codiamat, the supreme court effectively overruled this court's memorandum opinion in McCarthy. See Codiamat, 131 Hawai'i at 224-27, 317 P.3d at 668-71. The supreme court also limited the application of Jendrusch to its facts, namely, where the disjunctive pleading is "used to join charges of violations of multiple sections or subsections of a statute." Id. at 226, 317 P.3d at 670. As previously noted, the situation covered by Jendrusch is not present in this case. Accordingly, Jendrusch and McCarthy do not support Vaimili's claim.

17

II.

Vaimili contends that his trial counsel provided ineffective assistance in failing to object to the disjunctive charging language. We disagree.

To show ineffective assistance of counsel, Vaimili bears the burden of establishing: "1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998) (block quote format and citation omitted). For the reasons previously stated, the failure of trial counsel to object to the disjunctive charging language did not reflect counsel's lack of skill, judgment, or diligence and did not result in the withdrawal or substantial impairment of a potentially meritorious defense. See id. We therefore reject Vaimili's claim that his trial counsel provided ineffective assistance.

III.

Vaimili argues that the Circuit Court violated his constitutional right to be present at trial because the State failed to establish that Vaimili had voluntarily absented himself from trial. Vaimili contends that there was insufficient evidence to show that his failure to appear was voluntary, and not due to injury, illness, or circumstances beyond his control. Vaimili argues in the alternative that even if he had voluntarily absented himself, the Circuit Court abused its discretion in conducting the trial in his absence. We conclude that Vaimili's arguments lack merit.

A.

1.

In Diaz v. United States, 223 U.S. 442, 455 (1912), the United States Supreme Court stated the rule applicable where a defendant voluntarily absents himself during trial:

18

> [W]here the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present, and leaves the court free to proceed with the trial in like manner and with like effect as if he were present.

The Court cited the following justification for the rule:

> "It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced.  The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it."

Id. at 457 (quoting Falk v. United States, 15 App. D.C. 446, 454 (1899)).

HRPP Rule 43, entitled "Presence of the Defendant[,]" incorporates the rule expressed in Diaz.  HRPP Rule 43 provides in relevant part:

> (a) **Presence required.**  The defendant shall be present at the arraignment, at the time of the plea, at evidentiary pretrial hearings, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.
>
> (b) **Continued presence not required.**  The further progress of a pretrial evidentiary hearing or of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,
>
> (1) is voluntarily absent after the hearing or trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial)[.]

(Emphases added.)

As provided by HRPP Rule 43, a defendant shall be considered to have waived his or her right to be present at trial where the defendant is initially present, but thereafter is voluntarily absent after the "trial has commenced[.]"  HRPP Rule 43(b)(1).  Thus, a threshold issue is determining when "trial has commenced" for purposes of HRPP Rule 43.  In the instant case,

Vaimili was present during jury selection, but failed to appear thereafter and was absent when the jury was sworn and for the remainder of the trial.

2.

Hawai'i's appellate courts have not addressed this specific threshold issue before. However, when interpreting a rule promulgated by the courts, principles of statutory construction apply. State v. Baron, 80 Hawai'i 107, 113, 905 P.2d 613, 619 (1995). Therefore, the interpretation of HRPP Rule 43 is a question of law reviewable de novo. See id.

Pursuant to rules of statutory construction, we must read the phrase "after . . . trial has commenced" as used in HRPP Rule 43(b)(1) in the context of the entire rule and construe it in a manner consistent with its purpose. See State v. Rauch, 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000).

HRPP Rule 43(a)(1) sets forth when the presence of a defendant is required. HRPP Rule 43(a)(1) provides that "[t]he defendant shall be present at the arraignment, at the time of the plea, at evidentiary pretrial hearings, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." (Emphasis added.) HRPP Rule 43 was patterned after the Federal Rules of Criminal Procedure (FRCP) Rule 43. State v. Caraballo, 62 Hawai'i 309, 322 n.12, 615 P.2d 91, 99 n.12 (1980);[11] see Matias v. State, 73 Haw. 147, 149, 828 P.2d 281, 283 (1992) (noting that FRCP Rule 43 "is to all intents and purposes identical with our rule"). Thus, the construction of FRCP Rule 43 by federal courts "is persuasive[,]" State v. Toguchi, 9 Haw. App. 466, 467, 845 P.2d 557, 558 (1993), and "we find it appropriate to incorporate the analysis used in the federal rule." Caraballo, 62 Hawai'i at 322 n.12, 615 P.2d at 99 n.12 (1980).

_____

[11] Caraballo construed Rule 43 of the Hawai'i Rules of Criminal Procedure, the predecessor of HRPP Rule 43.

Federal courts recognize that jury selection is a "stage of trial" under FRCP Rule 43(a).  See, e.g., United States v. Sterling, 738 F.3d 228, 236 (11th Cir. 2013); United States v. Alikpo, 944 F.2d 206, 209-10 (5th Cir. 1991).[12]  FRCP Rule 43 codified existing law that a defendant had a right to be present during jury selection.  See Alikpo, 944 F.2d at 209. Accordingly, federal courts have held that trial commences for purposes of FRCP Rule 43 when jury selection begins.  United States v. Bradford, 237 F.3d 1306, 1309-10 (11th Cir. 2001) (holding that for purposes of FRCP Rule 43, "a 'trial has commenced' when the jury selection process has begun" and stating that all other federal circuits to address the issue "have held that trial commences under [FRCP] Rule 43 when jury selection begins"); Government of the Virgin Islands v. George, 680 F.2d 13, 15 (3rd Cir. 1982) (holding that trial "commences" for FRCP Rule 43 purposes when jury selection begins); United States v. Krout, 56 F.3d 643, 645-46 (5th Cir. 1995) (holding the same). In Bradford, George, and Krout, the courts applied FRCP Rule 43 to the factual circumstances presented in Vaimili's case -- where the defendant was present for jury selection but was absent when the jury was sworn in.

Construing the commencement of trial for purposes of HRPP Rule 43(b)(1) as occurring when jury selection begins is consistent with the apparent purpose of the rule's waiver provision, which is to prevent a defendant from obstructing the

---

[12] The substantive content of FRCP Rule 43 that is relevant to this opinion has not materially changed since Hawai'i's adoption of HRPP Rule 43. In its current form, FRCP Rule 43 provides, in relevant part, that the defendant must be present at "every trial stage, including jury impanelment and the return of the verdict[.]"  FRCP Rule 43(a)(2).  FRCP Rule 43 further provides that "[a] defendant who was initially present at trial . . . waives the right to be present . . . when the defendant is voluntarily absent after the trial has begun[.]"  FRCP Rule 43(c)(1)(A) (formatting altered).  An earlier version of FRCP 43 provided that "[t]he defendant shall be present . . . at every stage of the trial including the impaneling of the jury and the return of the verdict," FRCP Rule 43(a), and that "the defendant will be considered to have waived the right to be present whenever a defendant, initially present at trial . . . is voluntarily absent after the trial has commenced[.]"  FRCP Rule 43(b)(1).

proceedings and frustrating the orderly process of trial by voluntarily absenting himself or herself from the courtroom. See Bradford, 237 F.3d at 1310; People v. Granderson, 79 Cal. Rptr. 2d 268, 269-70 (Cal. Ct. App. 1998) (construing California statute analogous to FRCP Rule 43). We also find compelling the following rationale federal courts have cited in support of their holding that trial commences for purposes of FRCP Rule 43 when jury selection begins, rather than later when the jury is sworn:

> The concept that a defendant could go through trial proceedings to the point of selecting the entire jury and then, perhaps because he was dissatisfied with the complement thereof, freely depart, does not appeal to us. To draw the bright line at the formality of swearing the jury would frustrate the purpose of Rule 43.

United States v. Miller, 463 F.2d 600, 603 (1st Cir. 1972); see Bradford, 237 F.3d at 1310; George, 680 F.2d at 15.

Although jeopardy does not attach until the jury is sworn, federal courts have rejected the argument that the test used in applying the Double Jeopardy Clause should be applied in determining when a trial "commences" for purposes of FRCP Rule 43. See, e.g., Bradford, 237 F.3d at 1310-11 (11th Cir. 2001) ("Given the distinct and different purposes of the Double Jeopardy Clause and Rule 43(b)(1), we find no compelling justification for importing the double jeopardy standard into the determination of when a trial commences for purposes of Rule 43(b)(1).").

For the reasons set forth above, we hold that for purposes of HRPP Rule 43, "trial has commenced" when the court has begun the process of selecting the jury.

B.

We now turn to whether the State established that Vaimili had voluntarily absented himself from trial. Whether or not a defendant is in custody is "crucial" to a determination of the voluntariness of a defendant's absence. See State v. Caraballo, 62 Haw. 309, 323, 615 P.2d 91, 100 (1980).

22

In this case, Vaimili had been released on bail when he failed to appear for trial. Although the Circuit Court did not know the precise reason for Vaimili's failure to appear, the record provides compelling evidence that Vaimili had absconded. Vaimili was present in court on June 21, 2010, when the Circuit Court informed the jurors that trial would resume on Wednesday, June 23, 2010. Vaimili failed to appear on June 23, 2010. Defense counsel represented that he had spoken to Vaimili the day before because they planned to meet, but that Vaimili failed to show up for their meeting, and thereafter, defense counsel had not been able to contact Vaimili by phone. Defense counsel had no explanation for Vaimili's failure to appear.

The Circuit Court continued the trial for five days until June 28, 2010. When the five days had passed, Vaimili's whereabouts were still unknown. On June 28, 2010, defense counsel advised the Circuit Court that Vaimili had not contacted counsel and that the bail bond company had not been able to locate him. The Circuit Court found that Vaimili had voluntarily absented himself from the proceedings. The Circuit Court continued the trial an additional twenty-one days until July 19, 2010. When the twenty-one days had passed, Vaimili's whereabouts remained unknown. On July 19, 2010, defense counsel informed the Circuit Court that he had not heard from Vaimili since June 22, 2010, and that Peppers, the head of bail bond company, had been unable to locate Vaimili and was presently on the mainland searching for Vaimili. Thus, Vaimili had been absent without any contact with his lawyer and without any legitimate explanation for almost a month. On July 19, 2010, the Circuit Court swore in the jury and proceeded with opening statements. We conclude that there was sufficient evidence to show that Vaimili was voluntarily absent.

C.

Relying on the Hawai'i Supreme Court's decision in State v. Okumura, 58 Haw. 425, 570 P.2d 848 (1977), Vaimili argues that even if he voluntarily absented himself from trial,

23

the Circuit Court abused its discretion in proceeding with the trial in his absence. We disagree.

1.

Okumura was in custody and was being tried before a jury on a charge of second-degree escape. Okumura, 58 Haw. at 426, 570 P.2d at 850. During a trial recess, Okumura made an unsuccessful attempt to escape from court custody by climbing out of a window of the Judiciary building. Id. Okumura sustained injuries that required medical treatment, and the trial judge requested that Okumura be attended to immediately. Id. As a result, Okumura was not in the courtroom when the trial proceedings reconvened. Id. Okumura's trial counsel requested a one-day continuance, which the trial judge denied. Id. at 426, 570 P.2d at 850-51. Trial proceeded, resulting in Okumura's absence from the courtroom during closing arguments, the court's instructions to the jury, and the rendering of the jury's verdict. Id. at 426, 570 P.2d at 851. The jury found Okumura guilty as charged. Id.

On appeal, Okumura argued that the trial court erroneously denied his motion for a continuance and thereby wrongfully deprived him of his constitutional right to be present for all stages of his trial. Id. at 427, 570 P.2d at 851. The Hawai'i Supreme Court agreed. Id.

The supreme court held that Okumura was not voluntarily absent from the courtroom within the meaning of Rule 43,[13] and, therefore, the trial should not have proceeded without him. Id. at 428, 570 P.2d at 851. The court observed that "[t]he voluntary absence provision of Rule 43 generally applies in the case of a defendant who in fact escaped or absconded, and does not apply to a defendant who is in custody." Id. The court distinguished the facts before it from cases where there is a "lengthy and unexplained absence of the defendant[,]" or the

---

[13] The supreme court applied Hawai'i Rules of Criminal Procedure Rule 43, the predecessor to HRPP Rule 43. Okumura, 58 Haw. at 427 n.3, 570 P.2d at 851 n.3.

24

defendant's "absence from trial [is] due to a successful escape or absconding." Id. at 428, 570 P.2d at 852. The court concluded that Okumura's injuries had not been voluntarily inflicted or intentionally incurred, and therefore his absence from trial while in custody and receiving medical treatment could not "be viewed as 'volitional' in terms of Rule 43." Id. at 429, 570 P.2d at 852. The court held that because Okumura had not been voluntarily absent, he did not waive his constitutional right to be present at trial. Id.

Although holding that Okumura was not voluntarily absent and had not waived his right to be present at trial, the court went on to discuss how it would resolve the case if it was to assume that Okumura was voluntarily absent. Id. The court stated that the decision on whether to postpone or continue with the trial if the defendant is voluntarily absent "lies in only a narrow discretion given to the trial judge" and requires the trial judge "to weigh the competing interests at stake." Id. The court further stated:

> The decision to continue (with the) trial involves the careful balancing of defendant's right to confront his accusers, and other possible prejudice which might result from his absence, . . . against the time and expense caused by defendant's effort to defeat the proceedings by his departure or flight.

Id. (ellipsis points in original) (quoting Smith v. United States, 357 F.2d 486, 490 (5th Cir. 1966)). In addition, citing United States v. Tortora, 464 F.2d 1202, 1210 (2d Cir. 1972), the court stated that "the narrow discretion given to the trial judge to proceed with the trial should be exercised only when the public interest clearly outweighs that of the absent defendant." Okumura, 58 Haw. at 430, 570 P.2d at 852.

The court concluded that even if Okumura was voluntarily absent, the public interest in continuing with the trial did not clearly outweigh Okumura's interests under the circumstances presented. Id. The court explained its reasoning in reaching this conclusion as follows:

> There is no evidence showing that the remainder of the trial could not have soon taken place with [Okumura] present. There is no showing that the trial could not have been delayed until such time as [Okumura] could be brought back to the courtroom. There has been no clear showing as to why the remainder of the trial could not have been rescheduled for at least the following day. In addition, the State did not seem to have felt that a delay in the trial would be particularly harmful to its case, for it never objected at trial to the one-day continuance requested by counsel for [Okumura]. The trial court abused its narrowly drawn discretion by proceeding with the trial here.

Id.

2.

Okumura states that in determining whether to continue with trial in the defendant's absence, a trial court is required to apply the balancing test even after it concludes that the defendant is voluntarily absent. However, in Caraballo, a case decided after Okumura, the Hawai'i Supreme Court, while referring to its articulation of the balancing test in Okamura, did not explicitly apply the balancing test after it concluded that Caraballo had waived his right to be present at trial by being voluntarily absent. See Caraballo, 62 Haw. at 321, 323, 615 P.2d at 99-100. Caraballo therefore raises the question of whether the balancing test is required after waiver due to voluntary absence is established and whether the balancing-test analysis in Okumura should be regarded as dicta.[14]

Caraballo, who was free on bail, left the courtroom, at his request and with the trial court's permission, during jury selection and the testimony of a prosecution witness at trial. Id. at 319-20 & nn.8-9, 615 P.2d at 98-99 & nn.8-9. On appeal, Caraballo argued that he was deprived of his right to be present at all stages of his trial. Id. at 319, 615 P.2d at 98. The supreme court rejected this argument. The Hawai'i Supreme Court explained that while an accused has the right to be present

---

[14] See Eugene L. Shapiro, Examining an Underdeveloped Constitutional Standard: Trial in Absentia and the Relinquishment of a Criminal Defendant's Right to be Present, 96 Marq. L. Rev. 591, 615-16 & n.183 (2012) (citing Caraballo and categorizing Hawai'i as a jurisdiction that does not require a balancing of interests after waiver due to voluntary absence is established).

during all stages of his or her trial, the United States Supreme Court in <u>Diaz</u> had qualified this right, stating the rule as:

> [W]here the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present, and leaves the court free to proceed with the trial in like manner and with like effect as if he were present.

<u>Caraballo</u>, 62 Haw. at 321-22, 615 P.2d at 99 (quoting <u>Diaz</u>, 223 U.S. at 455)).

The Hawai'i Supreme Court adopted the "majority rule" set out in <u>Diaz</u> and found "that where defendant has voluntarily absented himself after the trial has begun, this operates as a waiver of his right to be present and the trial may continue as if he were present." <u>Id.</u> 323, 615 P.2d at 100. The supreme court further stated:

> This finding is not inconsistent with <u>Okumura</u>. <u>Unlike the situation there, defendant here was free on bail and therefore could make his own choices regarding the necessity of his presence at trial. The fact that Okumura was in custody even when he left the courtroom for medical care was crucial to our determination of the involuntariness of his absence</u>. Finally, the state in <u>Okumura</u> failed to sustain its burden of showing that defendant's absence was harmless beyond a reasonable doubt.

<u>Id.</u> (footnote omitted) (emphasis added). In rejecting Caraballo's claim that his right to be present at trial had been violated, the supreme court did not explicitly apply the balancing test set forth in <u>Okumura</u>.

### 3.

Based on the Hawai'i Supreme Court's analysis in <u>Caraballo</u>, it is unclear to what extent the <u>Okumura</u> balancing test must be applied. Although not required by the United States Constitution or FRCP Rule 43, the federal circuits have generally applied a supervisory balancing-of-interest test, even after a determination has been made that the defendant voluntarily absented himself from trial. <u>See</u> Eugene L. Shapiro, <u>Examining an Underdeveloped Constitutional Standard: Trial in Absentia and the</u>

Relinquishment of a Criminal Defendant's Right to be Present, 96 Marq. L. Rev. 591, 612 (2012). However, the balancing test applied by some federal courts has been refined since Okumura was decided, and the Second Circuit has recognized that a trial court has "broad discretion" to proceed with trial. See United States v. Nichols, 56 F.3d 403, 417-18 (2d Cir. 1995).

Of the factors considered by courts in applying the balancing test, perhaps the most salient is the reasonable likelihood that the trial could soon proceed with the defendant present. See, e.g., Nichols, 56 F.3d at 418 (recognizing that "there is usually sufficient justification to [proceed with trial] even in the defendant's absence if the court finds the defendant to have engaged in stonewalling and other misconduct, or if there is no reasonable likelihood that the trial could soon proceed with the defendant present" (internal quotation marks and citations omitted) (emphasis added)); United States v. Beltran-Nunez, 716 F.2d 287, 291 (5th Cir. 1983) ("Of course, had an inquiry before the trial proceeded established for the record that the defendant had deliberately absented himself and that there was no reasonable probability he could be located shortly, we would be loath to say that the district court would have abused its discretion by failing to delay or reschedule the trial.").

Prejudice to the government's ability to prosecute its case is inherent in the finding that the defendant is not reasonably likely to soon return. When a trial is terminated due to an absent defendant, the government cannot commence trial again until the defendant returns. See HRPP Rule 43; Crosby v. United States, 506 U.S. 255, 262 (1993) (holding that FRCP Rule 43 prohibits trial in absentia of a defendant who is not present at the beginning of trial). Therefore, where the defendant's whereabouts are unknown after reasonable inquiry and the defendant's return without significant delay in unlikely, the termination of the trial results in a delay that is indefinite and without a determinable limit. An indefinite trial delay

after the prosecution is ready for trial would likely have a prejudicial effect on the prosecution's ability to present and prove its case. Witnesses' memories may fade and their willingness and availability to testify may change. In addition, the government would bear the burden and expense of having to reassemble its entire case at a later, indefinite date. Where the defendant's whereabouts are unknown and the defendant's return without significant delay is unlikely, the prejudice to the government is much greater than the Okumura situation, where the defendant's whereabouts are known and the defendant's quick return can reasonably be expected.

4.

Assuming that the Okumura balancing test is applicable, we conclude that the Circuit Court did not abuse its discretion in deciding to continue with the trial. The evidence in the record clearly showed that Vaimili was voluntarily absent and was not reasonably likely to soon return. Vaimili failed to appear on June 23, 2010, despite having sat through jury selection two days before and being present when the Circuit Court instructed the jurors to return on June 23, 2010. The Circuit Court continued the trial to June 28, 2010, and then to July 19, 2010. On both dates, Vaimili's whereabouts remained unknown, defense counsel informed the Circuit Court that Vaimili had not contacted counsel and that Vaimili had not been located by the bail bond company searching for Vaimili, and all the evidence and information available to the Circuit Court supported the conclusion that Vaimili had absconded. Indeed when the jury was finally sworn on July 19, 2010, Vaimili had been absent without any legitimate explanation for almost a month. Because there was no reasonable possibility that trial could have soon taken place with Vaimili present, and because the discharge of the jury and termination of the trial would have postponed the trial indefinitely, we conclude that the public interest in proceeding

with the trial clearly outweighed that of the absent Vaimili. See Okumura, 58 Haw. at 430, 570 P.2d at 852.[15/]

In addition, the record reflects that an indefinite postponement of the trial would have prejudiced the government's ability to present its case, thereby rewarding Vaimili for absconding. The State represented that the CW had been brought from the mainland to testify at trial, and that the CW feared that Vaimili and his friends would attempt to keep her from testifying against him. The reasonableness of the CW's fear of Vaimili was supported by the CW's trial testimony, which recounted the violence and psychological coercion that Vaimili had perpetrated against her. The CW's fear of Vaimili and his friends also raised questions regarding whether a trial delay would affect the CW's willingness to testify. Moreover, because the CW had relocated to the mainland and had to be brought to Hawai'i to testify, a delay in the trial imposed an emotional and financial burden on her.[16/]

The discharge of the jury and an indefinite delay of the trial would also have imposed additional burdens and expenses on the government. The jury pool had already been called in for jury selection; the jurors had been selected; and the State had flown in the CW from the mainland for trial. Under the circumstances of this case, we conclude that it was not an abuse of discretion for the Circuit Court to decide to proceed with the

---

[15/] We note that on appeal, Vaimili only argues that the Circuit Court violated his right to be present by proceeding with trial on July 19, 2010, and completing the trial in his absence. Vaimili does not argue that the Circuit Court violated his right to be present by holding the proceedings on June 28, 2010, in his absence, during which the Circuit Court questioned jurors about their future availability and what they had heard about the case, replaced a juror with a substitute, and held a hearing on Vaimili's motion to dismiss. Assuming that Vaimili had a right to be present during the June 28, 2010, proceedings, we conclude that the evidence showed that Vaimili was voluntarily absent on June 28, 2010, and was not reasonably likely to soon return, and that the Circuit Court did not abuse its discretion in holding the proceedings on June 28, 2010, in Vaimili's absence.

[16/] At Vaimili's sentencing the State noted that the CW reported that she felt that "victims have no rights; that she was re-traumatized through the whole court process."

trial after Vaimili voluntarily absented himself from the proceedings.

CONCLUSION

For the foregoing reasons, we affirm the Circuit Court's Judgment.

On the briefs:

Jeffrey A. Hawk
(Hawk Sing & Ignacio)
for Defendant-Appellant

James M. Anderson
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

31